**Terry Lee GRIFFIN, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

No. 21A01–9611–PC–379.

Court of Appeals of Indiana.

Sept. 11, 1998.

Transfer Denied Nov. 18, 1998.

Susan K. Carpenter, Public Defender, Hope Fey, Deputy Public Defender, Indianapolis, for Appellant–Petitioner.

Jeffrey A. Modisett, Attorney General, John B. Herriman, Deputy Attorney General, Indianapolis, for Appellee–Respondent.

## OPINION

BAILEY, Judge.

### Case Summary

Terry Lee Griffin ("Griffin") appeals the trial court's order denying his petition for post-conviction relief, following his conviction of Burglary,[1] a class B felony, and his adjudication as an habitual offender. We affirm.

### Issues

*Griffin raises four issues for our review which we consolidate and restate as follows:*

I. Whether the trial court's questioning of two witnesses during Griffin's bench trial deprived him of his right to an impartial finder of fact.

II. Whether the trial court erred in allegedly using unadmitted deposition testimony as substantive evidence of Griffin's guilt.

III. Whether Griffin was denied effective assistance of trial and appellate counsel.

### Facts

The facts, as set forth by this court in Griffin's direct appeal, are as follows:

At approximately 7:30 a.m. on the morning of June 19, 1991, James Abercrombie returned to his apartment after working the 10:30 p.m. to 7:00 a.m. shift. While the only two doors to his apartment were locked, and he saw no signs of forced entry, Abercrombie found that his safe was missing and that three of his filing cabinets had been disturbed. Abercrombie's safe contained his collection of rare coins while his filing cabinets contained other valuable coins. He testified that the safe weighed 230 pounds when empty and contained about 100 pounds of coins, and that it took at least two people to carry it into his apartment. Abercrombie estimated that $19,000.00 worth of coins had been stolen.

After calling the police, Abercrombie was shown an array of photographs and asked if he had been associated with anyone in his past business dealings who appeared in the photographs. Abercrombie picked out the photograph of Griffin. Abercrombie began buying coins from Griffin approximately a month and a half before some of his coins were stolen. One of those purchases occurred in Abercrombie's apartment, and the last purchase from Griffin occurred approximately two weeks before the burglary. Abercrombie also testified that Griffin was the only person from whom Abercrombie had purchased coins at his apartment.

On the evening of June 18, 1991, at about 7:00 p.m., Griffin and his girlfriend [Margaret Hatfield Lutz ("Lutz")] visited their friend Selena McCowan's home. Griffin then left McCowan's home at approximately 9:00 p.m. in [Lutz's] car. At about 11:00 p.m., McCowan drove [Lutz], in McCowan's car, to a motel where she was to meet Griffin and spend the night. McCowan left [Lutz] alone at the motel around 11:30 p.m. [Lutz] was then awakened by Griffin's arrival at the motel at about 1:00 a.m. on the morning of June 19.

---

1. IND.CODE § 35–43–2–1.

Later that day, after Abercrombie had notified police of the stolen coins, and had picked out Griffin from a photo array, the police obtained consent to search [Lutz's] car at her apartment. In the trunk was a plastic bag containing several packaged, rare coins, which Abercrombie later identified to be among those stolen from his apartment. [Lutz] was present at the search and became visibly upset when the police officers found Abercrombie's coins. She stated that she had nothing to do with the coins in the trunk, that the car had not been moved since she and Griffin returned from the motel, and that Griffin was the only person, aside from herself, who had access to the car.

After a bench trial, Griffin was convicted of burglary as a Class B felony and was then adjudicated as an habitual offender. He was sentenced to 20 years for the Class B burglary conviction and an additional 10 years on the habitual offender count.

*Griffin v. State,* Ind. Ct.App. No. 21A01–9308–CR–276, 632 N.E.2d 387 (April 7, 1994) at 2–4; (PCR. 95–96).[2] On March 15, 1995, Griffin filed a petition for post-conviction relief which was later amended. After a hearing, the post-conviction court entered findings of fact and conclusions of law denying the petition. This appeal ensued.

### Discussion and Decision

#### Standard of Review

■■■ The petitioner in a post-conviction proceeding bears the burden of establishing the grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *Johnson v. State,* 693 N.E.2d 941, 945 (Ind.1998). The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. *Moore v. State,* 686 N.E.2d 861, 862–63 (Ind.Ct.App.1997). Further, when appealing from a denial of post-conviction relief, a petitioner stands in the position of one appealing from a negative judgment. *Johnson,* 693 N.E.2d at 945. On review, we will not reverse the judgment unless the evidence as a whole points unerringly and unmistakably to a conclusion opposite that

reached by the trial court. *Coleman v. State,* 694 N.E.2d 269, 273 (Ind.1998). It is only where the evidence is without conflict and leads to but one conclusion, and the trial court has reached the opposite conclusion, that the decision will be disturbed as being contrary to law. *Id.; Johnson,* 693 N.E.2d at 945.

#### I. Questioning by Trial Court

■■■ Griffin contends he is entitled to post-conviction relief as a result of the trial court's conduct during trial. In particular, Griffin argues the court's sua sponte questioning of two witnesses during his trial deprived him of his constitutional right to an impartial finder of fact.

The record indicates that during Griffin's trial before the bench, the State called as a witness Lutz, Griffin's girlfriend at the time of the offense. Following direct and cross examination, the trial court questioned her regarding the events of the evening in question. Specifically, the court asked Lutz whether, on that evening, she had had any conversations with Griffin that would reveal: 1) his reasons for leaving McCowan's residence, 2) where he might have been going, and, 3) where he had been, after he reunited with Lutz. Among other things, the trial court also questioned Lutz as follows:

Q. And when did ... when were you first aware that your vehicle was at the motel?

A. When I got up to leave.

Q. Didn't you find that curious?

A. No. Not really. I mean I have let other people use my car before, because you know ... It's just an old junker.

Q. I take it that there were a lot of people that knew that you and Mr. Griffin were going to be at the Gray Motel that night?

A. Oh yeah ... Yeah, they would know where we'd be. If I wasn't home and he wasn't home, they'd know where we'd be. 'Cause we didn't go out or anything.

**2.** Citations to specific pages in the trial record shall be preceded by the letter "R." Citations to

the post-conviction record shall be preceded by the letters "PCR."

Q. So, anybody who might have taken your car on the evening of the ... 18th, would've known to return it to you at the ... Gray Motel on the morning of the ... 19th....

A. If I wasn't at home, yeah. They, you know, they know I'd be there or at Terry's mom's.

(R. 411–12).

The trial court additionally questioned Griffin, who took the stand in his own defense and denied any involvement in the burglary of Abercrombie's residence. Griffin explained during his testimony that on the evening of the offense, he was present with Lutz at McCowan's residence. Griffin further testified that his brother Jimmy came to pick him up from McCowan's home, but rather than driving Jimmy's car, the two took Lutz's vehicle to a nearby town. Eventually the two picked up Griffin's sister, Sue, who drove Lutz's car to the motel. Jimmy thereafter drove Sue to her home. Following direct and cross examination, the trial court questioned Griffin regarding his whereabouts, his companions, and his means of transportation on the evening in question.

Griffin contends that, in conducting the foregoing questioning, the trial court pointedly tested the credibility of the defense and thereby effectively became an advocate for the State. Further, he claims, the questioning explored matters raised by neither the State nor the defense. Finally, Griffin argues, the trial court's conduct amounts to fundamental error because he had denied all participation in the crime and because the evidence of guilt was otherwise not strong.

▉▉ It is true, as Griffin contends, that a trial before an impartial judge is an essential element of due process. *Timberlake v. State*, 690 N.E.2d 243, 256 (Ind.1997). However, a judge's discretion to question witnesses is greater in bench trials than in trials before juries. *Ware v. State*, 560 N.E.2d 536, 539 (Ind.Ct.App.1990), *trans. denied.* Although a trial judge may not assume an adversarial role in any proceeding, the judge may intervene in the fact-finding process and question witnesses in order to promote clarity or dispel obscurity. *Id.; Isaac v. State*, 605 N.E.2d 144, 148 (Ind.1992), *cert. denied,*

508 U.S. 922, 113 S.Ct. 2373, 124 L.Ed.2d 278 (1993). The purpose of allowing the judge to question witnesses is to permit the court to develop the truth or obtain facts which may have been overlooked by the parties. *Isaac,* 605 N.E.2d at 148. To make a showing of reversible error, the defendant must show that the trial judge's questioning of witnesses was harmful and prejudicial to his case. *McCord v. State,* 622 N.E.2d 504, 511 (Ind. 1993).

In this case, the trial court's questioning was performed in an impartial manner and served to complete the factual background presented by the witnesses. Further, Griffin presented a complicated scheme of events to explain his whereabouts during the evening in question. The trial judge attempted to clarify Griffin's confusing testimony, and commented as he did so that there were "too many names floating around." (R. 502). The post-conviction court made the following findings and conclusions:

> The Court put questions to four (4) witnesses, which questions, explanations and clarifications of questions, and answers thereto covered about fourteen (14) pages in a three hundred ninety-two (392) page trial transcript.... [Certain] questions clarified what [Griffin] said to the Witness [Lutz] when [Griffin] left their mutual friend's house as to where [Griffin] was going, and established that [Lutz] and [Griffin] had no conversation as to where [Griffin] had been when [Griffin] rejoined [Lutz] at a motel later. Additional questions to [Griffin] enabled [Griffin] to [o]ffer his explanation of how persons other than [Griffin] could have driven [Lutz's] vehicle with [Griffin] and [Lutz's] vehicle ending up in the locations as previously testified to. The questioning was of limited duration and all questions of limited scope. No questions went into unexplored areas or were directed to material elements of the charged offense and all questioning was conducted in an impartial manner.

(PCR. 69–70). We agree with the post-conviction court that "[t]he questions of the Special Judge at trial fall well within the parameters of permitted questioning by a trial

court." (R. 71). Accordingly, we find no error, fundamental or otherwise, on this issue.[3]

## II. Deposition Testimony

■ Griffin next contends the trial court erred in considering certain deposition testimony as substantive evidence of his guilt. According to Griffin, the trial court's use of the deposition testimony was erroneous because that testimony was never admitted as evidence, and because two of the depositions contained hearsay accounts and other evidence implicating Griffin in prior burglaries.

The record demonstrates that during trial, Griffin's counsel moved to publish the depositions of State's witnesses Lutz, Abercrombie, Detective William R. Cox ("Cox"), and Detective Joseph E. Todd ("Todd"). The colloquy between defense counsel and the court was as follows:

[DEFENSE COUNSEL]: At this time, your Honor, also, I'd like to make a Motion to Publish the Depositions that were taken in this case. A motion that I did not make earlier.

THE COURT: Any objection to that?

[STATE]: No, your Honor.

THE COURT: What depositions are you referring to?

[DEFENSE COUNSEL]: The depositions of Mr. Abercrombie, Detective Todd, Detective William Cox, and Margaret Hatfield–Lutz.

. . . .

THE COURT: Who has those depositions?

[STATE]: The State does, your Honor.

[DEFENSE COUNSEL]: I believe the State does, your Honor.

THE COURT: Okay. We'll show those depositions admitted and I will . . . I don't think you need to mark 'em . . . we'll show them published and I will read them during a break that we might take, or a recess, or over the lunch hour.

[DEFENSE COUNSEL]: Thank you, your Honor.

(R. 140–42). During Griffin's sentencing hearing, the trial court summarized the evidence it had considered in reaching its conclusion that Griffin was guilty as charged. The court stated that its finding of guilt was "based upon the trial evidence including the depositions of Margaret Lutz, James Abercrombie, Joseph Todd and William . . . William Cox." (R. 594). According to Griffin, because the deposition testimony was published but never admitted as evidence, the trial court erred in using the testimony substantively. Further, Griffin contends that his trial counsel's failure to object to the trial court's consideration of the unadmitted deposition testimony amounts to ineffective assistance of counsel. He likewise claims his appellate counsel's failure to raise the issue on direct appeal constitutes ineffective assistance.

■ When reviewing a claim of ineffective assistance of counsel, we initially presume that counsel's representation was within the wide range of reasonable professional assistance. *Nordstrom v. State*, 627 N.E.2d 1380, 1384 (Ind.Ct.App.1994), *trans. denied.* The defendant has the burden to rebut the presumption of competency with strong and convincing evidence. *Coleman v. State*, 694 N.E.2d 269, 272–73 (Ind.1998). In order to prevail on a claim of ineffective assistance of counsel, a defendant must show 1) counsel's representation was deficient, and 2) the deficient performance prejudiced the defendant. *Id.* at 272; *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To fulfill the second prong, a defendant must show that counsel's performance was so prejudicial that it deprived the defendant of a fair trial. *Johnson v. State*, 693 N.E.2d 941, 951 (Ind.1998).

---

3. Griffin also claims his trial counsel's failure to object to the court's questioning of witnesses, and his appellate counsel's failure to raise the issue on direct appeal, amount to ineffective assistance of counsel. However, we have already determined that the trial court did not err in conducting such questioning. Thus, an objection, if made, would not have been sustained. *See Taylor v. State*, 689 N.E.2d 699, 705 (Ind. 1997) (stating that where a claim of ineffective assistance is based on a failure to object at trial, defendant must show that a proper objection, if made, would have been sustained).

Indiana Trial Rule 5(D)(5) provides that "[t]he filing of any deposition shall constitute publication." The purpose of this addition to T.R. 5 was to remove the requirement of a "motion to publish" a deposition, and a court's order which followed the motion. 1 WILLIAM F. HARVEY, INDIANA PRACTICE § 5.7, at 98 (Supp.1997); *see also* 2 W. HARVEY, § 32.11, at 141 (Supp.1997) (noting that 1991 amendment to T.R. 5(D)(5) overturned certain cases which set forth limitations upon admissibility of depositions). Thus, motions to publish, and the ceremony which followed when those motions were granted, no longer exist. 1 W. HARVEY, § 5.7, at 99. Gone as well is any meaning associated with the "publication" of a deposition or other discovery document. *Id.* Rather, if such a document is to be used, then the proper procedure pursuant to T.R. 5(D)(5) is to file it with the trial court. *Id.* Once a deposition has been filed, it is available for any use to which it might be put, subject to the provisions of Ind. Trial Rules 26(C) and 37. *Id.*

Additionally, Indiana Trial Rule 32(A) governs the use of depositions in court proceedings. The rule provides in relevant part as follows:

At the trial ... any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition, by or against any party who had reasonable notice thereof or by any party in whose favor it was given in accordance with any one [1] of the following provisions:

(1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness.

. . . .

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

(a) that the witness is dead; or

(b) that the witness is outside the state, unless it appears that the absence of the witness was procured by the party offering the deposition; or

(c) that the witness is unable to attend or testify because of age, sickness, infirmity, or imprisonment; or

(d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or

(e) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used; or

(f) upon agreement of the parties.

In this case, all four deposition witnesses were present at trial, testified during the State's case-in-chief, and were subject to cross-examination. In an attempt to impeach Officer Todd's credibility during cross-examination, defense counsel referenced a portion of Todd's deposition and pointed out certain inconsistencies between his pre-trial statements and his testimony during trial. The foregoing use of Todd's deposition testimony was appropriate pursuant to T.R. 32(A)(1). By contrast, any use of the deposition testimony for non-impeachment purposes was erroneous in this case, because there was no showing that the foundational requirements set forth in T.R. 32 were satisfied.

■ However, in criminal bench trials, we presume that the court disregarded inadmissible testimony and rendered its decision solely on the basis of relevant and probative evidence. *Helton v. State*, 624 N.E.2d 499, 513 (Ind.Ct.App.1993), *cert. denied*, —— U.S. ——, 117 S.Ct. 1252, 137 L.Ed.2d 333 (1997). Here, before imposing sentence, the court gave a detailed summary of the trial proceedings, and explained that the summary was based not only upon the depositions, but also upon the evidence and the judge's notes. Griffin has failed to demonstrate that the court specifically took into account inadmissible evidence of his prior misconduct in reaching its judgment of guilty. Further, to the extent that defense counsel did not use deposition testimony to impeach three of the four witnesses, we assume the testimony was con-

sistent with the witnesses' in-court statements, and thus the deposition testimony was, in large part, cumulative of other properly presented evidence.

■ Further, even assuming that counsel was deficient in failing to object to the trial court's use of the deposition testimony, to obtain reversal for ineffective assistance of counsel, a defendant must demonstrate that counsel's error rendered the result of the proceeding fundamentally unfair or unreliable. *Games v. State,* 684 N.E.2d 466, 469 (Ind.1997), *modified on reh'g,* 690 N.E.2d 211. As we held in Griffin's direct appeal, there was substantial evidence of probative value pointing to Griffin's commission of the charged offense. Accordingly, we cannot say the trial court's use of the deposition testimony rendered the result of the proceeding fundamentally unfair or unreliable. *See Games,* 684 N.E.2d at 469.

### III. Effective Assistance of Counsel

#### Habitual Offender Determination

■ Griffin contends he is entitled to post-conviction relief because he received ineffective assistance of both trial and appellate counsel. According to Griffin, his trial counsel's failure to object to the lack of evidence presented during the habitual offender proceedings renders counsel's performance deficient. Further, he claims, appellate counsel's failure to raise the issue on direct appeal constitutes ineffective assistance.

The record indicates that during trial on the habitual offender count, the State introduced State's Exhibit 4, consisting of a sentencing order from Fayette Circuit Court. The order shows that in August, 1980, Griffin was sentenced to six years for Burglary, a class B felony. The State also introduced into evidence State's Exhibit 5, consisting of a docket printout from Fayette County Court. The docket indicates that on January 4, 1985, the State filed an information charging Griffin with Theft. The docket additionally reflects Griffin's guilty plea to that charge on June 11, 1985, and a sentencing hearing on July 23, 1985. However, the docket does not establish the commission date of the second predicate felony. Accord-

ing to Griffin, counsel's failure to object to the absence of such evidence amounts to ineffective assistance. We disagree.

In *Weatherford v. State,* 619 N.E.2d 915 (Ind.1993), our supreme court held that in order to prevail upon a claim such as Griffin's in a post-conviction setting, the petitioner must do more than demonstrate that there was a technical deficiency with respect to the habitual offender factual basis. Rather, the petitioner must affirmatively demonstrate that the sequential requirement of the relevant habitual offender statute is not, in fact, present. *Id.* at 918; *Butler v. State,* 658 N.E.2d 72, 78 (Ind.1995).

Here, Griffin has not presented any evidence demonstrating that the prior convictions upon which his habitual offender status is based are out of sequence. Thus, he has failed to show that the evidence as a whole leads unerringly to a conclusion opposite that of the post-conviction court. As for Griffin's claim that appellate counsel was deficient in failing to raise the claim on direct appeal, we observe that our supreme court rejected an identical claim in *Lingler v. State,* 644 N.E.2d 131 (Ind.1994). Accordingly, the court did not err in denying Griffin's petition for post-conviction relief on this basis.

Affirmed.

NAJAM and RILEY, JJ., concur.