ATTORNEY FOR APPELLANT
Michael J. Jenuwine
Robert L. Jones, Jr.
Notre Dame Legal Aid Clinic
South Bend, Indiana

# In the
# Indiana Supreme Court

J.S.,

*Appellant (Petitioner),*

v.

CENTER FOR BEHAVIORAL HEALTH,

*Appellee (Respondent).*

Appeal from the Monroe Circuit Court, No. 53C07-0401-MH-00007
The Honorable David L. Welch, Judge

Dissent from Denial of Petition to Transfer from the
Indiana Court of Appeals, No. 53A04-0509-CV-563

**January 9, 2007**

**Rucker, Justice, dissenting from denial of transfer.**

Addressing the circumstances under which a mental health patient can be forced to take anti-psychotic drugs against the patient's will, this Court announced among other things that the "indefinite administration of these medications is not permissible." In re the Mental Commitment of M.P., 510 N.E.2d 645, 648 (Ind. 1987). In this case the Appellant seeks transfer contending that the trial court's order requiring Appellant to take medication over her objection is in direct conflict with the foregoing precedent. I agree and therefore would grant transfer.

Forty-eight-year-old J.S. has a chronic psychotic disorder with symptoms typical of paranoid schizophrenia. She also has a persistent, uncontrolled epileptic disorder. Since the age of sixteen, J.S. has been hospitalized at least five times for mental illness and has undergone surgery to remove a significant portion of her left temporal lobe in an effort to control her epileptic seizures. Despite her illnesses J.S. earned a Bachelor's Degree in general studies in 1991 and a Master's Degree in Public Health in 1999, both from Indiana University. Although J.S. has sometimes lived in an independent setting, her mother serves as her guardian.

J.S. has been under the care of Dr. Jerry Neff at the Center for Behavioral Health (Center) located in Bloomington. He has prescribed Risperdal to her, a medication used to treat schizophrenia. From time to time J.S. has refused to take her medication and at one time had stopped eating because she believed that people were poisoning her food. This lack of nutrition resulted in significant weight loss.

In late 2003 and early 2004, J.S. again refused to eat because she thought that her food was being poisoned, and her Center case manager found bottles of Risperdal in J.S.'s home that revealed J.S. had not been taking her medication. Around this same time J.S. became verbally aggressive with her case manager. Consequently, the Center filed a petition for J.S.'s emergency detention and, soon thereafter, a regular involuntary commitment. After a hearing the trial court entered an order (Commitment Order) that included findings that J.S. was suffering from severe seizure disorder/chronic paranoid schizophrenia, that she was dangerous and gravely disabled, and that she was in need of commitment to an appropriate facility for a period expected to exceed ninety days. App. at 11. The Commitment Order also directed the hospital to "administer medication to the patient with or without the patient's consent" (referred to as the Forced Medication Order). Id. The trial court also found that J.S.'s condition would deteriorate if J.S did not receive medication regularly.

Pursuant to the Forced Medication Order, in January 2004 J.S. began receiving an injectable form of Risperdal, Risperdal Consta. She was eventually released from the hospital but required to return to the Center to meet with her case manager weekly and to receive injections every two weeks. Although the medication improves J.S.'s mental health, J.S. does

not believe that she is mentally ill, does not want her medication, and complains that the Risperdal Consta injections exacerbate her seizure disorder. Because of these beliefs, she failed to obtain regular injections as required by the court's order.

In December 2004 the Center filed a periodic report and a treatment plan summary that cited J.S.'s lack of insight into her mental illness and J.S.'s reluctance to take her medication. The Center also requested that the Commitment Order "currently in effect for this patient be continued without a hearing." App. at 13. At J.S.'s request the trial court scheduled a hearing, which was conducted in August 2005. At the conclusion of the hearing the trial court entered an order which found that J.S. was mentally ill, dangerous, and gravely disabled. The trial court also continued J.S.'s involuntary regular commitment and determined that inpatient treatment and continuation of the Forced Medication Order were necessary. J.S. appealed challenging the sufficiency of the evidence to support the trial court's Commitment Order and the adequacy of the Forced Medication Order.[1] The Court of Appeals affirmed the judgment of the trial court. J.S. v. Ctr. for Behavioral Health, 846 N.E.2d 1106 (Ind. Ct. App. 2006). J.S. seeks transfer challenging only the propriety of the Forced Medication Order. This Court has entered an order denying transfer.

Described as "the most controversial and divisive issue between the medical and legal professions," Dennis E. Cichon, The Right to "Just Say No": A History and Analysis of the Right to Refuse Antipsychotic Drugs, 53 La. L. Rev. 283, 286 (1992), the question of whether and under what circumstances institutionalized mentally disabled patients may refuse prescribed psychiatric treatment has been a source of much debate.[2] This Court has recognized that a

---

[1] More specifically J.S. contended: (1) the Center failed to establish by clear and convincing evidence that J.S. was a danger to herself or others; (2) the Center failed to establish by clear and convincing evidence that J.S was gravely disabled; (3) the trial court failed to address this Court's command to curtail the time period within which an anti-psychotic drug may be administered; (4) the trial court failed to require the Center to demonstrate by clear and convincing evidence that it had evaluated and specifically rejected each and every alternative form of treatment and that there exists no less restrictive alternative treatment; and (5) the trial court's forced medication order was not supported by clear and convincing evidence that the probable benefits from the forced injections of Risperdal outweigh both the risks of harm to J.S. and her personal concerns about the medication. Appellant's Br. at i, ii.

[2] The assumption that mentally ill patients have a right to refuse treatment is due, in part, to the Supreme Court's ruling in Youngberg v. Romeo, 457 U.S. 307 (1982), which held that freedom from bodily

3

"patient has a liberty interest in remaining free of unwarranted intrusions into his physical person and his mind while within an institution" and that "[i]t cannot be seriously disputed that forced medication of a mental patient interferes with that liberty interest." In re M.P., 510 N.E.2d at 646. This Court has also acknowledged that the State has a statutory as well as a constitutional duty to provide treatment for the mentally ill. Id. (citing Ind. Code § 16-14-1.6-2 (amended and recodified at I.C. § 12-27-2-1 and I.C. § 12-27-2-2); Ind. Const. Art. IX, § 1; Youngberg, 457 U.S. 307). Striking the balance between the patient's liberty interest and the State's *parens patriae* power to act in the patient's best interest, this Court not only outlined what the State is required to prove in order to override a patient's right to refuse treatment, but also enunciated three limiting elements for the trial court's consideration, which this Court described as "basic to court sanctionable forced medications." In re M.P., 510 N.E.2d at 647.

> First, the court must determine that there has been an evaluation of each and every other form of treatment and that each and every alternative form of treatment has been specifically rejected. It must be plain that there exists no less restrictive alternative treatment and that the treatment selected is reasonable and is the one which restricts the patient's liberty the least degree possible. Inherent in this standard is the possibility that, due to the patient's objection, there may be no reasonable treatment available. This possibility is acceptable. The duty to provide treatment does not extend beyond reasonable methods.

---

restraint has long been recognized as the "core" of the liberty interest protected by the Due Process Clause of the United States Constitution. However, Youngberg further declared that treatment decisions by professionals for individuals in an institution are presumptively valid and will not violate an individual's rights unless they constitute "a substantial departure from accepted professional judgment, practice, or standards." Id. at 323. Since then, federal courts have applied the Youngberg professional judgment standard to the forced administration of anti-psychotic and psychotropic drugs to civilly committed patients. See, e.g., United States v. Charters, 863 F.2d 302, 312-13 (4th Cir. 1988); Johnson v. Silvers, 742 F.2d 823, 825 (4th Cir. 1984); Rennie v. Klein, 720 F.2d 266, 269 (3d Cir. 1983) (plurality opinion). Because the federal standard has posed a substantial bar to relief many patients have sought refuge in state courts that have more broadly defined the right to refuse drug treatments based on state law. See, e.g., Riese v. St. Mary's Hosp. & Med. Ctr., 243 Cal. Rptr. 241, 246-50 (1987) (state statute); People v. Medina, 705 P.2d 961, 967 (Colo. 1985) (state statute and case law); In re Orr, 531 N.E.2d 64, 71-72 (Ill. App. Ct. 1988), superceded by statute (state statute); In re M.P., 510 N.E.2d at 646 (state statute); In re Guardianship of Linda, 519 N.E.2d 1296, 1299 (Mass. 1988) (case law); Jarvis v. Levine, 418 N.W.2d 139, 148 (Minn. 1988) (state constitution); Rivers v. Katz, 495 N.E.2d 337, 341-42 (N.Y. 1986) (case law and state constitution); In re the Mental Health of K.K.B., 609 P.2d 747, 749-51 (Okla. 1980) (case law); State ex rel. Jones v. Gerhardstein, 416 N.W.2d 883, 892 (Wis. 1987) (state and federal constitution).

Second, the court must look to the cause of the commitment. Some handicapped persons cannot have their capacities increased by anti-psychotic medication. The drug therapy must be within the reasonable contemplation of the committing decree.

And thirdly, the indefinite administration of these medications is not permissible. Many of these drugs have little or no curative value and their dangerousness increases with the period of ingestion. The court must curtail the time period within which they may be administered. If a patient does not substantially benefit from the medication, it should no longer be administered.

Id. at 647-48. This third limiting element is at issue here.

The Commitment Order that was first issued on January 28, 2004 provided in relevant part, "the Respondent is accordingly committed to the Bloomington Hospital Med Psych Unit, Bloomington, Indiana for a period to exceed ninety (90) days. The Bloomington Hospital Med Psych Unit, Bloomington, Indiana shall administer medication to the patient with or without the patient's consent." App. at 11. Absent in the order is any indication that the trial court curtailed the time period within which J.S.'s medication may be administered. The trial court's order of August 31, 2005 is similarly deficient. Id. at 10. In pertinent part the order simply says, "It Is Therefore Ordered that the Request to Continue the Regular Commitment and Forced Medication Order be and is hereby Granted." Id. The failure to include a time period limitation leaves open the very real possibility that administration of J.S.'s medications may be "indefinite" which we have declared as "not permissible." In re M.P., 510 N.E.2d at 648.

The Court of Appeals in this case acknowledged that the trial court's order "did not specify a time period for the forced administration of the medications." J.S., 846 N.E.2d at 1115. According to the court "the statutory review requirement exists regardless of whether the trial court's order mentions it." Id. The court reasoned that the periodic review for commitment orders provided by Indiana Code section 12-26-15-1(a)[3] rendered the Forced Medication Order here not indefinite. I have a much different view than that of my colleagues.

---

[3] Indiana Code Section 12-26-15-1(a) reads in full:
    At least annually, and more often if directed by the court, the superintendent of the facility or the attending physician including the superintendent or attending physician of

5

First, although the statute provides for periodic review – "[a]t least annually, and more often if directed by the court" – the statute is simply silent on the question of the length of time forced medication may be administered.  Indeed even if a periodic report is filed on a monthly basis, there still is nothing to prohibit a monthly request for forced medication that continues into the indefinite future.  This is no mere hyperbole.  The treatment plan the Center submitted in December 2004, which precipitated the August 2005 hearing, indicated that its expected duration was "indefinite."  App. at 17.  For a period of approximately four months between October 1, 2004 and January 28, 2005, J.S. had not taken her injections of Risperdal Constra.  Dr. Neff testified that he did not observe a deterioration in J.S.'s condition during this brief period of time that she was off her medication.  Tr. at 106, 109, 114.  Despite this evidence, Dr. Neff opined that in the absence of a commitment or continuation of the forced medication order J.S. "will inevitably discontinue treatment and decompensate resulting in her grave disability."  Tr. at 77.  He believes a relapse not occurring in the period of 119 days "is perhaps encouraging, but it's certainly not a guarantee anymore than if you play Russian roulette and the first five times you snap the trigger, you don't die, means that your [sic] safe to do it forever."  Tr. at 81.[4]

an outpatient therapy program, shall file with the court a review of the individual's care and treatment.  The review must contain a statement of the following:
(1)     The mental condition of the individual.
(2)     Whether the individual is dangerous or gravely disabled.
(3)     Whether the individual:
   (A)    needs to remain in the facility; or
   (B)    may be cared for under a guardianship.

[4] In fact it appears that clinical thought is dominated by the assumption that patients must remain on medications all their lives to maintain lifelong stabilization.  George Gardos & Jonathan O. Cole, Maintenance Antipsychotic Therapy: Is the Cure Worse than the Disease?, 133 Am. J. Psychiatry 32, 32 (1976) ("Most experts believe that drug therapy should be continued indefinitely in view of the substantial risk of relapse upon discontinuance. . . .").  And although the potential for relapse is evident, studies also indicate an equally possible outcome – no relapse.  See Peter J. Weiden & Mark Olfson, Nat'l Inst. of Mental Health, Cost of Relapse in Schizophrenia, 21(3) Schizophrenia Bull. 419, 419 (1995) (finding after a review of all available comparative studies of schizophrenic patients treated with anti-psychotic drugs that the monthly rate of relapse for patients who have discontinued their medications is 11% per month, as compared with 3.5% per month for patients on maintenance therapy); Courtenay M. Harding & James H. Zahniser, Empirical Correction of Seven Myths About Schizophrenia with Implications for Treatment, 90 Acta Psychiatrica Scandinavica 140, 143 (1994) (having analyzed the results of long-term studies, noted a "surprising number" (at least 25-50%) of patients who were completely off their medications suffered no further signs or symptoms of schizophrenia and were functioning well).

Second, and perhaps more importantly, In re M.P. acknowledged the requirement of annual judicial review. After outlining the three limiting elements a trial court must consider in order to override a patient's right to refuse treatment, this Court remanded the cause to the trial court declaring, "If the redetermination is in favor of the State and permits M.P. to be medicated against his will, the treatment so sanctioned shall be ordered subject to automatic reevaluation by the court within one year. (I.C. 16-14-9.1-10)." In re M.P., 510 N.E.2d at 648. With only minor editing this statute was recodified in 1992 as Indiana Code section 12-26-15-1(a). It is clear to me that this Court envisioned the statutorily mandated annual review and the limiting elements working in conjunction to ensure that forced medication is not carried on any longer than absolutely necessary.

In sum, Indiana Code section 12-26-15-1(a), like its predecessor Indiana Code section 16-14-9.1-10, does not provide protection against the indefinite administration of anti-psychotic drugs against a patient's will. That can only be accomplished by careful trial court oversight and the entry of an appropriate order imposing a precise time limit. See, e.g., In re the Commitment of J.B., 766 N.E.2d 795, 801 (Ind. Ct. App. 2002) (concluding that the trial court's forced medication order was erroneous, in part because it failed to impose a definite time limit on the medications that were to be administered). I would therefore grant transfer in this case, reverse the Forced Medication Order, and remand to the trial court to enter an order that curtails the time period within which J.S.'s forced medication can be administered.

Sullivan, J., concurs.

7