**In the Matter of the COMMITMENT OF A.W.D., Appellant–Petitioner.**

No. 82A04–0609–CV–506.

Court of Appeals of Indiana.

Feb. 28, 2007.

Erin L. Berger, Vanderburgh County Public Defender Agency, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy At-torney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

A.W.D. appeals his continued commitment in Evansville State Hospital ("the Hospital"). He raises two issues, which we restate as:

1. Whether fundamental error occurred when the trial court conducted direct examination of Dr. Brad Mallory of the Hospital and cross-examination of A.W.D.; and

2. Whether the evidence was sufficient to support the court's continued commitment of A.W.D.

Because the court's questioning of witnesses was an unbiased attempt to gather the necessary evidence and because the evidence was sufficient, we affirm.

## FACTS AND PROCEDURAL HISTORY

In 2001, when A.W.D. was approximately forty-seven years old, he was temporarily committed to Madison State Hospital because he was schizophrenic and his family felt threatened by him. Later that year, A.W.D. was transferred to the Hospital, where he has remained following a number of regular commitment hearings. A.W.D. has schizophrenia, diabetes, cardiomyopathy,[1] high cholesterol, peripheral neuropathy, and HIV, all of which require daily treatment with medication. He has family in Evansville, and every other week he is allowed to spend approximately ten hours outside the hospital with his brother.

On July 19, 2006, the trial court conducted a hearing regarding A.W.D.'s commit-

---

1. Cardiomyopathy is "a serious disease in which the heart muscle becomes inflamed and doesn't work as well as it should." www.americanheart.org/presenter.jhtml?identifier=4468 (last visited January 4, 2007).

ment. Present were Senior Judge Maurice O'Connor, Dr. Mallory, A.W.D., and A.W.D.'s counsel Erin Berger. No one appeared on behalf of the State. A.W.D. and Dr. Mallory testified. The trial court conducted direct examination of Dr. Mallory and cross-examination of A.W.D., then entered an order continuing A.W.D.'s commitment.

## DISCUSSION AND DECISION

### 1. *Conduct of Trial*

■ A.W.D. first alleges fundamental error because the trial court conducted direct examination of Dr. Mallory and cross-examination of A.W.D.[2] A.W.D. claims the court "stepped out of his neutral stance and into a position where it asked leading questions of the doctor and cross-examined" A.W.D. (Appellant's Br. at 10); however, A.W.D. does not identify any questions by the court that were leading or demonstrated bias. He has thereby waived this allegation of error. *See* Ind. Appellate Rule 46(A)(8)(a) ("Each contention must be supported by citations to the ... Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22."). Waiver notwithstanding, we find no error.

■ A judge may question witnesses in a civil commitment hearing:

It is true that it is a violation of due process to combine the roles of judge and prosecutor in criminal trials. However, many judicial proceedings permit or encourage the trial court to take an active part in the examination of witnesses. In fact, most restrictions on the court's power to examine witnesses are

relaxed in trials to the court. It must be remembered, too, that due process is a flexible standard which "cannot be divorced from the nature of the ultimate decision that is being made."

While we stress the need for procedural protections of the ill person's liberty interest, it is the commitment proceeding that determines whether treatment should be provided. The lack of treatment may be more damaging than the loss of liberty and the stigma occasioned by commitment. Actually, IC 16–14–9.1–10 [relevant portion now found at Ind.Code § 12–26–2–5(d) ] does not require the petitioner to be represented by counsel at the commitment hearing. What is important is not so much the manner of presenting evidence as is the determination by the trial judge of the need for treatment. Thus, we find it in keeping with the statute for the trial court to have participated in the examination of [the doctor].

We might observe further that the trial judge did not ask leading questions, argue with counsel, or cross-examine Jones. The message from the record is that he sought to discharge in a highly professional manner the duty imposed on him by IC 16–14–9.1–10.

In a similar setting, *i.e.,* the commitment of juveniles, the United States Supreme Court has suggested that the admitting physician is the only factfinder required by due process. The Court impliedly recognized, at least in the context of the commitment of juveniles, that a lack of neutrality cannot be assumed on the part of the factfinder merely

**2.** We note A.W.D. did not object at trial to these examinations. Failure to object at trial typically results in waiver of an issue for appeal. *See, e.g.,* Ind. Evidence Rule 103(a) (requiring timely objection at trial to preserve

error in admission of evidence). However, we note A.W.D.'s liberty was at stake and the issue he raises could, if supported, implicate his fundamental right to a fair trial. We therefore address his argument on the merits.

because of his or her participation in the examination of witnesses.

*Jones v. State,* 477 N.E.2d 353, 359–60 (Ind.Ct.App.1985) (internal citations omitted), reh'g denied, trans. denied.

■ While the judge cross-examined A.W.D., we do not find any error in his having done so because the examination was not hostile and the questions did not demonstrate bias. In the context of a criminal trial, we explained:

> Although a trial judge may not assume an adversarial role in any proceeding, the judge may intervene in the fact-finding process and question witnesses in order to promote clarity or dispel obscurity. The purpose of allowing the judge to question witnesses is to permit the court to develop the truth or obtain facts which may have been overlooked by the parties. To make a showing of reversible error, the defendant must show that the trial judge's questioning of witnesses was harmful and prejudicial to his case.

*Griffin v. State,* 698 N.E.2d 1261, 1265 (Ind.Ct.App.1998), *trans. denied* 706 N.E.2d 176 (Ind.1998). Judge O'Connor was attempting to "promote clarity," "dispel obscurity," and "obtain facts" necessary to evaluate whether A.W.D. was a risk to others or was gravely disabled. *See id.* In the absence of specific examples of bias, we will not presume bias against A.W.D. simply because the court questioned witnesses. *See Jones,* 477 N.E.2d at 360.

### 2. *Sufficiency of Evidence*

■ A.W.D. also challenges the court's determination his regular commitment[3] should be continued. When reviewing sufficiency of the evidence, we look only at the evidence and reasonable inferences therefrom most favorable to the trial court's judgment. *J.S. v. Ctr. for Behavioral Health,* 846 N.E.2d 1106, 1111 (Ind. Ct.App.2006). We may not reweigh the evidence or judge the credibility of the witnesses. *Commitment of M.M. v. Clarian Health Partners,* 826 N.E.2d 90, 96 (Ind.Ct.App.2005), *trans. denied* 841 N.E.2d 183 (Ind.2005). "If the trial court's commitment order represents a conclusion that a reasonable person could have drawn, we will affirm the order even if other reasonable conclusions are possible." *Id.*

To demonstrate a person should be committed involuntarily, a petitioner (here the Hospital) must demonstrate "by clear and convincing evidence that: (1) the individual is mentally ill and either dangerous or gravely disabled; and (2) detention or commitment of that individual is appropriate." Ind.Code § 12–26–2–5(e). A.W.D. claims the Hospital failed to prove he was dangerous or gravely disabled.

The Periodic Report submitted by the hospital on July 11, 2006, indicates the hospital believes A.W.D. is dangerous to others and is gravely disabled because he "continues to require the structure and supervision of this facility in order to meet his basic needs and to gain additional insight and improve his judgment regarding inappropriate sexual behaviors and dangers to others due to impulsive sexual indiscretions." (Appellee's App. at 2.)

■ Our Code defines "dangerous" as "a condition in which an individual as a result of mental illness, presents a substantial risk that the individual will harm the individual or others." Ind.Code § 12–7–2–53. "Dangerousness must be shown

---

**3.** "A regular commitment is the most restrictive form of involuntary treatment and is proper for an individual whose commitment is expected to exceed ninety days." *J.S. v. Ctr. for Behavioral Health,* 846 N.E.2d 1106, 1111 (Ind.Ct.App.2006).

by clear and convincing evidence indicating that the behavior used as an index of a person's dangerousness would not occur but for the person's mental illness." *In re Commitment of C.A.*, 776 N.E.2d 1216, 1218 (Ind.Ct.App.2002).

The progress report indicates, regarding A.W.D.'s dangerousness to others, "he needs to gain insight into the possible consequences of sexually inappropriate behavior and his mental illness and to improve his judgment, particularly as it relates to impulsive sexual indiscretions that may have negative consequences for others." (Appellee's App. at 2.) Dr. Mallory testified: "The core thing that is keeping him in the hospital right now is a combination of concern about his judgment as far as resisting any temptation to have sex and his judgment as far as advising potential sexual partners about his status...." (Tr. at 14.) Dr. Mallory believes A.W.D. has an "inability to reason through why he needs to inform the other person" prior to engaging in sexual activity that he is HIV positive. (*Id.* at 18.) A.W.D. incorrectly "thinks that people already know his HIV status." (*Id.* at 19.) Because at least three of A.W.D.'s previous sexual partners "have been mentally retarded to some degree," (*id.* at 22), Dr. Mallory was concerned that A.W.D. would have "difficulty in even if they knew [his status] understanding whether that person is able to appreciate the gravity of knowing [his status]." (*Id.*)

"Gravely disabled" is defined as:
a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:
(1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or
(2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.
Ind.Code § 12-7-2-96.

The evidence demonstrated A.W.D. is diabetic, requires two finger-prick tests of his blood sugar levels per day, and is unable to perform the tests on himself. Each day he must take two anti-psychotic medications, Cogen to relieve side-effects of the anti-psychotics, a benzodiazepine for his anxiety, "a couple medications" for his HIV, "two medications for cardiomyopathy, one for cholesterol, one for his diabetes and one for peripheral neuropathy." (Tr. at 8.) When he leaves the hospital for a family visit, the staff tests his blood sugar and then prepackages accurate dosages of all the required medications for him. Dr. Mallory testified A.W.D. would need "somebody with some medical expertise looking after him when he gets out" because failing to take insulin when his blood sugar is too high represents a serious danger to A.W.D. (*Id.* at 14.)

In light of this evidence, we conclude the court's decision to renew A.W.D.'s commitment was supported by the evidence, either because A.W.D. was dangerous to others or gravely disabled. Accordingly, we affirm.

Affirmed.

NAJAM, J., concurs.

MATHIAS, J., dissents with separate opinion.

MATHIAS, Judge, dissenting.

I must respectfully dissent.

I first acknowledge the long-standing principle that a "judge may intervene in the fact-finding process and question witnesses in order to promote clarity or dispel obscurity." *Griffin v. State*, 698 N.E.2d 1261, 1265 (Ind.Ct.App.1998), *trans. denied.* However, I believe there is a funda-

mental difference between a judge intervening or participating in the fact-finding and a judge conducting the fact-finding.

In this proceeding, the trial court conducted the entire direct examination and the entire cross examination. I cannot agree with my colleagues that the trial court was merely attempting to "promote clarity" through these examinations. Rather, the trial court assumed the role of A.W.D.'s adversary by eliciting the evidence against A.W.D. A civil commitment constitutes a significant deprivation of personal liberty. *See Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). Therefore, I believe that our courts must afford persons subject to confinement the benefits and protections of due process through truly adversarial proceedings.

Indiana Code section 12–26–2–5(e) (2001) provides that "[t]he petitioner [in a civil commitment proceeding] is required to prove by clear and convincing evidence that (1) the individual is mentally ill and either dangerous or gravely disabled; and (2) detention or commitment of that individual is appropriate." By allowing the presiding judge to elicit all of the testimony on behalf of the petitioner, the trial court necessarily sought to carry the petitioner's burden of proof required to commit the respondent to involuntary mental health treatment. Indiana Code and due process, however, require that the *petitioner* support the burden of proof in such a proceeding.

I further acknowledge that Indiana precedent sanctions the trial judge's active participation in proving the petitioner's case in a mental health commitment proceeding. See *Jones v. State,* 477 N.E.2d 353 (Ind.Ct.App.1985); *In re Commitment of Roberts,* 723 N.E.2d 474 (Ind.Ct.App. 2000). However, I respectfully disagree.

The panel in *In re Commitment of Roberts* acknowledged that "a violation of due process occurs where a trial judge combines the role of judge and advocate" but sidestepped the impact of that well-settled principle by finding no evidence of improper behavior in the facts before them. *Id.* at 476. Yet, to this judge at least, it would seem that the courtroom dynamics of a trial judge calling, swearing in, and questioning witnesses presents precisely the prohibited combination of roles. This is especially so in the area of mental health proceedings where witnesses, who are often family members or friends of the respondent, are reluctant to testify and fearful of what might happen to the respondent as a result of their testimony. One need look no further than the issues surrounding the forced administration of anti-psychotic drugs in mental health cases to understand just how critical true due process protection for these respondents is. *See J.S. v. Center for Behavioral Health,* 859 N.E.2d 666 (Ind.2007) (Rucker, Justice, dissenting from the denial of transfer, with Justice Sullivan concurring).

"An independent and honorable judiciary is indispensable to justice in our society." Ind. Judicial Conduct Canon 1(A) (2007). To preserve this independence, judges must "act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Jud. Canon 2(A). No matter the actual, unimpeachable integrity of the judicial officer involved, requiring or allowing that officer to present the evidence upon which he will rule in a commitment proceeding is inconsistent with promoting public confidence in the inherent integrity and impartiality of our judicial system.

A better procedure in civil commitment hearings was recently adopted by the Iowa Supreme Court in *In the Matter of S.P.,* 719 N.W.2d 535 (IOWA 2006). Concerned

with the trial court taking on an adversarial role in civil commitment proceedings, the supreme court stated: "[W]hen faced with pro se applicants in a civil commitment proceeding, the referee or district court is advised to either appoint an attorney at the county's expense ... or warn the applicant at the outset that the applicant will have to prove his or her case without assistance from the court." *Id.* at 539.

I believe that to preserve patients' due process rights in civil commitment proceedings, our courts should adopt a rule similar to that enunciated by the Iowa Supreme Court. Or, as is already the case in some Indiana counties, Indiana's prosecuting attorneys should present the petitioner's case for involuntary commitment to the court.

I would therefore reverse the judgment of the trial court.