**In re The MENTAL COMMITMENT of M.P.**

No. 49S02–8707–CV–704.

Supreme Court of Indiana.

July 23, 1987.

Kenneth J. Falk, Legal Services Organization of Indiana, Indianapolis, Diana R. Mitchell, Legal Services Organization of Indiana, Inc., Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., Robert S. Spear, Chief Counsel, Indianapolis, for appellee.

Richard A. Waples, Indiana Civil Liberties Union, Dennis F. Cantrell, Mary Beth Claus, Daniel R. Fagan, Bingham Summers Welsh & Spilman, Indianapolis, for amicus curiae Indiana Civil Liberties Union.

**DeBRULER, Justice.**

We grant transfer in this case for the limited purpose of determining the extent of the right of an involuntarily committed mental patient to refuse treatment with anti-psychotic medication. App.Rule 11(B)(3). The Court of Appeals upheld the judgment of the Marion Municipal Court, Room No. 3, sanctioning the forcible administration of anti-psychotic medication, following a hearing precipitated in part by the refusal of the patient M.P. to permit the administration of such medication. *In Re: The Mental Commitment of M.P.,* (1986), Ind.App., 500 N.E.2d 216.

Indiana statutorily recognizes a right to refuse treatment until the proposed treatment plan has been judicially reviewed:

"All patients ... are entitled to be informed of the nature of the treatment ... proposed, the known effects of receiving and of not receiving such treatment ... and alternative treatments ... if any.... An involuntary patient ... who wishes to refuse to submit to treatment.... is entitled to petition the committing court or hearing officer for consideration of the treatment or program. In the absence of such a petition, the service provider may proceed with the proposed treatment....."

I.C. § 16–14–1.6–7.

This provision profoundly affirms the value and dignity of the individual and the commitment of this society to insuring humane treatment of those we confine. The duty imposed upon the institution is to inform all patients, even though some will be unable to appreciate what they are hearing, and to respect all negative responses even though some may not be the result of rational reflection. The judicial branch is assigned the duty of insuring that the statutory obligations are met.

Courts are empowered to reject a proposed treatment or program. However, the provision does not establish the standard which the court should employ when determining whether or not the involuntarily committed mental patent should be medicated or treated against his will. The standard urged by counsel for appellant is one of "dangerous to himself or others". The standard urged by the State is the "professional judgment" of the physician. In order to arrive at the appropriate standard to be employed by the court, it is necessary to examine the competing interests presented by the involuntarily committed mental patient and the institution responsible for his care.

The State has a statutory and a constitutional duty to provide treatment for the mentally ill. *See* Ind.Code § 16–14–1.6–2. *See also* Indiana Constitution, Art. IX, Sec. 1; *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.E.2d 28 (1982). A psychiatrist charged with treating a mentally ill patient must necessarily use his professional judgment in determining what he believes to be the preferred course of treatment. He must also be aware that he has an obligation to protect the patient from self-inflicted harm and to prevent him from harming others.

The patient has a liberty interest in remaining free of unwarranted intrusions into his physical person and his mind while within an institution. *Mills v. Rogers,* 457 U.S. 291, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982). Recent cases in this country chronicle the continued use of insulin shock, electric shock, wet packs, restraining straps, sheets, jackets, chairs, and side rooms, and the forced administration of drugs. It cannot be seriously disputed that forced medication of a mental patient interferes with that liberty interest. What must be established is a balance between the patient's liberty interest, the State's *parens patriae* power to act in the patient's best interest, and the State's duty to provide treatment.

At the heart of this case is the virtually undisputed allegation that a person medicated with anti-psychotic drugs has a 50% risk of contracting tardive dyskinesia, a disease exemplified by twisting tongue movements, puffing of cheeks, smacking of lips, sucking movements of mouth, and face and body movements characterized by continuous or rocking motions, tremors and bizarre postures, and other symptoms, and which at this time is incurable. Anti-psychotic medication may also produce numer-

ous other side effects which can be extremely unpleasant for the patient. M.P. has previously been medicated with anti-psychotic drugs, experienced unpleasant side effects, and refuses medication for this reason.

The State argues that M.P.'s condition improved when he received anti-psychotic drugs and that if he were to resume the medication his chances for a quicker release from his commitment would be improved. Dr. Stoner also testified that in his professional judgment treatment with anti-psychotic drugs would be beneficial to M.P.

Contrary to the argument presented by appellant's counsel that the standard of dangerous to self or others would adequately protect the rights of an involuntarily committed mental patient, the fact that there is a possibility the patient might harm himself or another person is not a sufficient justification for permitting forced medication with anti-psychotic drugs. Given the significant risks inherent in the use of these drugs, the propensity for dangerousness is not sufficient to overcome the patient's liberty interest in being free from unreasonable intrusions into his body and mind. If this standard were applied, once a patient had indicated suicidal tendencies or been overly aggressive toward another patient or staff, the psychiatrist could feel justified in prescribing anti-psychotic medication to control the behavior of the patient, regardless of the risk posed by the ingestion of the drug.

The standard proposed by the State of professional judgment points in the right direction and can lead to a form which will provide an appropriate balance of interests. Standing alone, however, it is not sufficient, for it does not adequately take into consideration the fact that the psychiatrist has competing interests in providing treatment to the patient, protecting his other patients and the staff of the facility and attempting to secure the patient's earliest release from the facility. In order to protect the patient's liberty interest in being free from unwarranted intrusions into his body and mind, it is necessary to determine which of the interests reflected by the psychiatrist is the foundation for his decision to treat the patient with anti-psychotic drugs.

The Indiana statutory scheme providing for judicial review of a proposed treatment plan when a patient objects to the course of treatment is constitutionally sufficient to satisfy the due process requirement of a judicial hearing by an independant decision maker to evaluate the competing interests reflected. I.C. § 16–14–1.6–7. At that hearing, the State has the burden of proof, by clear and convincing evidence, *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), to establish the necessity of medication with anti-psychotic drugs.

■ In order to override a patient's statutory right to refuse treatment, the State must demonstrate by clear and convincing evidence that: 1) a current and individual medical assessment of the patient's condition has been made; 2) that it resulted in the honest belief of the psychiatrist that the medications will be of substantial benefit in treating the condition suffered, and not just in controlling the behavior of the individual; 3) and that the probable benefits from the proposed treatment outweigh the risk of harm to, and personal concerns of, the patient. At the hearing, the testimony of the psychiatrist responsible for the treatment of the individual requesting review must be presented and the patient may present contrary expertise.

■ Equally basic to court sanctionable forced medications are the following three limiting elements. First, the court must determine that there has been an evaluation of each and every other form of treatment and that each and every alternative form of treatment has been specifically rejected. It must be plain that there exists no less restrictive alternative treatment and that the treatment selected is reasonable and is the one which restricts the patient's liberty the least degree possible.

Inherent in this standard is the possibility that, due to the patient's objection, there may be no reasonable treatment available. This possibility is acceptable. The duty to provide treatment does not extend beyond reasonable methods. Second, the court must look to the cause of the commitment. Some handicapped persons cannot have their capacities increased by anti-psychotic medication. The drug therapy must be within the reasonable contemplation of the committing decree. And thirdly, the indefinite administration of these medications is not permissible. Many of these drugs have little or no curative value and their dangerousness increases with the period of ingestion. The court must curtail the time period within which they may be administered. If a patient does not substantially benefit from the medication, it should no longer be administered.

If after the hearing brought about by the objecting patient has taken place, the court is convinced that the State has met its burden of proof of showing, by clear and convincing evidence, a professional judgment having the above recited qualities and characteristics, it should sanction the forced medication. If it is not so convinced, it should reject such treatment.

However, this opinion should not be construed to require that judicial review be mandated for the administration of medications generally accepted as preferred treatment for physical needs. The physician will be permitted to prescribe medications necessary for the treatment of physical illnesses. The state has a duty to provide treatment to the patient and if in the professional judgment of the physician medication is necessary to cure a physical problem, that decision making process will not be questioned.

This case is now remanded to the trial court for an evaluation in light of the guidelines presented in this opinion. If the redetermination is in favor of the State and permits M.P. to be medicated against his will, the treatment so sanctioned shall be ordered subject to automatic reevaluation by the court within one year. (I.C. 16–14–9.1–10)

SHEPARD, C.J., and GIVAN, PIVARNIK and DICKSON, JJ., concur.