**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Feb 04 2013, 9:22 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BARBARA J. SIMMONS**
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| ELIGAH THOMAS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1207-CR-528 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Deborah J. Shook, Judge Pro Tempore
Cause No. 49F08-1111-CM-78139

**February 4, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

After a bench trial, Eligah Thomas ("Thomas") was convicted of four counts of Battery[1] and one count of Resisting Law Enforcement[2], both as Class A misdemeanors. He now appeals his convictions.

We affirm.

**Issues**

Whether there is sufficient evidence to support Thomas's convictions where Thomas contends that:

1. He had a defense to criminal charges based upon a statutory right to refuse medication;

2. The State did not produce sufficient evidence to overcome his claim of self-defense; and

3. Police officers were not engaged in the execution of their official duties.

**Facts and Procedural History**

On November 2, 2011, Thomas was an in-patient of the Wishard Memorial Hospital psychiatric ward ("Wishard") in Indianapolis, where he would eventually be diagnosed with schizophrenia. Thomas had been placed in treatment as part of a seventy-two-hour emergency detention for diagnosis. That evening, medical staff at Wishard attempted to administer an injectable medication to Thomas; Thomas, however, refused to permit nurses to inject the medication.

---

[1] Ind. Code § 35-42-2-1.

[2] I.C. § 35-44-3-3 (West 2012) (recodified at I.C. § 35-44.1-3-1, effective July 1, 2012).

As a result of Thomas's noncompliance, Wishard medical staff contacted Marion County Special Deputy Sheriff William Snyder ("Deputy Snyder"), who was among the police officers assigned to Wishard to provide law enforcement services and to assist hospital staff with their duties when called. Deputy Snyder was accompanied that night by his supervisor, Lieutenant Travis Steele ("Lieutenant Steele").

Deputy Snyder and Lieutenant Steele responded to the medical staff's call and found Thomas in the hallway in front of his hospital room. Wishard staff urged Thomas to return to his room to receive an injected medication. Thomas eventually turned to enter his room, but continued to eye the deputies warily. Thomas refused to accept the medication, however, and told Deputy Snyder and Lieutenant Steele that they were "going to need more help." (Tr. at 7.) Deputy Snyder and Lieutenant Steele then called for assistance. Three additional deputies arrived to assist them; among them were Deputies Shemara Russell ("Deputy Russell") and Christopher Myers ("Deputy Myers").

The five deputies instructed Thomas to lie down and permit medical staff to administer the injection, but Thomas continued to refuse. Deputy Snyder explained to Thomas that if he refused, the deputies would force him to comply because the medication had been ordered by his doctor and he was in emergency detention, and thus could not refuse medication. Thomas continued to refuse, and the deputies began to move toward him to permit medical staff to administer the injection.

As the deputies advanced, Thomas assumed a fighting stance and struck Deputy Snyder across the face with an elbow, knocking off Deputy Snyder's glasses. Thomas also

3

grabbed Deputy Russell's belt and removed a tactical baton from its holder. Deputy Snyder used a Taser to attempt to subdue Thomas, but Thomas continued to fight, eventually kicking Lieutenant Steele and Deputies Russell and Myers, and knocking the Taser from Deputy Snyder's hand.

Deputy Myers eventually placed handcuffs on one of Thomas's wrists and the deputies were able to force Thomas onto the floor in a prone position. Thomas continued to resist with his other wrist pinned beneath his body. Eventually, the deputies wrested Thomas's other hand from under his body and handcuffed him, allowing Wishard staff to administer the injection.

Once Thomas was subdued and his medication was administered, medical staff retrieved a wheelchair and the deputies took Thomas into custody. At the end of the encounter, Deputy Myers had a bleeding laceration on one of his arms. Thomas had bitten Deputy Russell during the fight. Deputy Snyder was also injured; as a result of the fight with Thomas, Deputy Snyder ruptured three discs in his back, suffered a fractured vertebra, and required ongoing pain management.

On November 2, 2011, Thomas was charged with four counts of Battery—one count each for striking Lieutenant Steele and Deputies Snyder, Russell, and Myers—and one count of Resisting Law Enforcement, all as Class A misdemeanors.

On June 6, 2012, a bench trial was conducted, at the conclusion of which the court found Thomas guilty as charged as to all five counts. Consequently, the trial court sentenced Thomas to one year of imprisonment for each offense, with the sentences run concurrently

4

and credit time for twenty-one days already served. The court suspended the remainder of the sentence to non-reporting probation with eight months' mental health treatment.

This appeal ensued.

## Discussion and Decision

### Standard of Review

After a bench trial, Thomas contends that there was insufficient evidence to sustain his convictions for Battery and Resisting Law Enforcement. Our standard of review on a claim of insufficient evidence after a bench trial is well-settled.

> This court will not reweigh the evidence or assess the credibility of witnesses. Cox v. State, 774 N.E.2d 1025, 1028 (Ind. Ct. App. 2002). Only the evidence most favorable to the judgment, together with all reasonable inferences that can be drawn therefrom will be considered. Id. If a reasonable trier of fact could have found the defendant guilty based on the probative evidence and reasonable inferences drawn therefrom, then a conviction will be affirmed. Id. at 1028-29.

Sargent v. State, 875 N.E.2d 762, 767 (Ind. Ct. App. 2007).

Here, Thomas was charged with four counts of Battery and one count of Resisting Law Enforcement, all as Class A misdemeanors. To convict Thomas of each count of Battery, as charged, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally touched each of the four sheriff's deputies—Lieutenant Steele and Deputies Snyder, Russell, and Myers—in a rude, insolent, or angry manner, and that each of the deputies was engaged in the execution of his or her official duty. App. at 25-28; I.C. § 35-42-2-1(a). To convict Thomas of Resisting Law Enforcement, as charged, the State was required to prove beyond a reasonable doubt that Thomas knowingly and forcibly resisted,

5

obstructed, or interfered with Deputy Snyder while he was lawfully engaged in the execution of his duties. App. at 29; I.C. § 35-44-3-3(a) (West 2012) (recodified at I.C. § 35-44.1-3-1, effective July 1, 2012).

Thomas advances several bases upon which he challenges his convictions for insufficient evidence; we address each in turn.

Statutory Right to Refuse Medication

Thomas first argues that he had a statutory right to refuse the administration of medication by Wishard medical staff, the deputies' conduct in forcing his compliance with the staff was a violation of that right, and thus we must reverse his conviction. Thomas directs us to Indiana Code section 12-27-5-2, which provides:

(a)     An involuntary patient who wants to refuse to submit to treatment or a habilitation program may petition the committing court or hearing officer for consideration of the treatment or program.

(b)     In the absence of a petition made under subsection (a), the service provider may proceed with the proposed treatment or habilitation program.

Where an individual placed in emergency detention, as Thomas was, wishes to challenge the provision of treatment, the State must prove by clear and convincing evidence that (1) a current and individual medical assessment of his needs had been made; (2) this assessment resulted in the honest belief of medical professionals that his continued care would be of substantial benefit to treating his medical conditions; and (3) the probable benefits of the care outweighed any risk of harm to him. See In re the Mental Commitment of M.P., 510 N.E.2d 645, 647 (Ind. 1987). Thomas argues that the State failed to carry its burden at his criminal trial. Thus, Thomas argues, he had a statutory right to refuse treatment

6

and to resist the efforts of law enforcement officers to assist Wishard medical staff in administering medication.

Thomas is correct that the State did not produce evidence as required by M.P., but that case is inapposite here. The standard provided in M.P. relates to the standard by which a court reviews a petition challenging treatment during involuntary commitment to care under Subsection 12-27-5-2(a). The State introduced testimony at trial from Deputy Snyder that Thomas was subject to emergency detention in Wishard's psychiatric ward, and therefore had no right to refuse medication. Thomas did not object to this testimony or produce any evidence to the contrary. There is no evidence that Thomas filed a petition under Subsection 12-27-5-2(a) at any point and, absent such a petition, Subsection 12-27-5-2(b) permits a medical provider to proceed with treatment. Further, Thomas does not direct us toward any other authority that might give rise to such a right—let alone that a statutory right to refuse treatment serves to privilege the acts of Battery and Resisting Law Enforcement.

There is no evidence that Thomas had any statutory right to refuse treatment under Section 12-27-5-2, and thus we cannot conclude that the trial court erred when it found him guilty of Battery and Resisting Law Enforcement under the theory Thomas now advances.

### Self-Defense

Thomas next argues that his battery of the four deputies was privileged conduct under a theory of self-defense, and that the State failed to present sufficient evidence to rebut his claim of self-defense. "A valid claim of self-defense is legal justification for an otherwise criminal act." Green v. State, 870 N.E.2d 560, 564 (Ind. Ct. App. 2007), vacated on trans.,

7

878 N.E.2d 215 (Ind. 2007), <u>trans. vacated and opinion reinstated</u>, 877 N.E.2d 467 (Ind.

2007).  Our statutes define self-defense:

> A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. However, a person:
>
> (1) is justified in using deadly force; and
>
> (2) does not have a duty to retreat;
>
> if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary.

I.C. § 35-41-3-2(c).  A person may use reasonable force against a public servant "if the

person reasonably believes the force is necessary to protect the person … from what the

person reasonably believes to be the imminent use of unlawful force." I.C. § 35-41-3-2(i)(1).

 Subsection (i) notwithstanding, "using force against a public servant" is not justified if "the

person provokes action by the public servant with intent to cause bodily injury to the public

servant" or "the person has entered into combat with the public servant or is the initial

aggressor, unless the person withdraws from the encounter and communicates … the intent to

do so and the public servant nevertheless continues or threatens to continue unlawful action."

 I.C. §§ 35-41-3-2(j)(2) & (3).

   "When a defendant raises the claim of self-defense, he is required to show three facts:

 1) he was in a place where he had a right to be; 2) he acted without fault; and 3) he had a

reasonable fear of death or great bodily harm."  <u>Wallace v. State</u>, 725 N.E.2d 837, 840 (Ind.

2000). We use the same standard of review upon an appeal from a claim concerning the sufficiency of evidence to rebut a claim of self-defense as for any other sufficiency of the evidence claim. Id.

Here, the evidence that favors the judgment was sufficient to rebut Thomas's claim of self-defense. Deputy Snyder testified that when he and Lieutenant Steele arrived in the hallway outside Thomas's hospital room at Wishard, Thomas was actively refusing to return to his room and accept medication. After hospital staff persuaded Thomas to return to his room, Thomas walked into the room while casting glances at Deputy Snyder and Lieutenant Steele. When the two deputies entered Thomas's room, he "just took a stance … folded his arms in front … told us that we were going to need more help" and told the deputies that "it would be on if we tried to touch him." (Tr. at 7.) After additional deputies arrived, Thomas "said he wasn't going to take it," (Tr. at 8) and as the deputies moved closer took a "fighting stance" and struck Deputy Snyder across the nose with an elbow. (Tr. at 9.)

The evidence favorable to the verdict thus indicates that Thomas neither acted without fault nor acted with a reasonable fear of death or bodily harm. See Wallace, 725 N.E.2d at 840. To the extent Thomas argues otherwise, he directs us to evidence unfavorable to the judgment and seeks that we reweigh evidence, which we cannot do. See Sargent, 875 N.E.2d at 767. We therefore conclude that there was sufficient evidence to overcome Thomas's self-defense claim at trial, and affirm his convictions for Battery.

## Execution of Official Duties

Finally, Thomas contends that there was insufficient evidence that the deputies were

9

engaged in the execution of their official duties, and thus his conviction for Resisting Law Enforcement must be reversed.

Here, Thomas testified that the sheriff's deputies were all uniformed on the day of the incident. He insists, however, that Deputy Snyder's testimony was insufficient evidence to establish that Deputy Snyder was executing his duties. Deputy Snyder testified that the role of deputies at Wishard is to "detect, deter and report any crimes … and to assist staff when called," (Tr. at 4) including the occasions "from time to time" when a deputy may be called to a patient's room in the psychiatric ward to assist in the administration of medication. (Tr. at 6.) We cannot agree that this is insufficient to establish that the deputies' assistance of medical staff in administering medication to an individual who, like Thomas, was subject to emergency mental health detention, was conduct outside the scope of the execution of official duties required by statute to sustain a conviction for Resisting Law Enforcement. We therefore affirm Thomas's conviction for Resisting Law Enforcement.

**Conclusion**

Thomas's acts of Battery and Resisting Law Enforcement were not privileged as a result of any statutory right to refuse medication. There was sufficient evidence at trial to overcome Thomas's claim of self-defense as a justification for four acts of Battery. There was also sufficient evidence that Deputy Snyder was executing his official duties to sustain Thomas's conviction for Resisting Law Enforcement.

Affirmed.

VAIDIK, J., and BROWN, J., concur.

10