## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 02 2015, 9:05 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Amy P. Payne
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

James L. Whitlatch
Kathryn DeWeese
Bunger & Robertson
Bloomington, Indiana

# I N   T H E
# COURT OF APPEALS OF INDIANA

M.D.,

*Appellant-Respondent,*

v.

Indiana University Health Bloomington Hospital,

*Appellee-Petitioner.*

June 2, 2015

Court of Appeals Case No.
53A05-1411-MH-515

Appeal from the Monroe Circuit Court.

The Honorable Stephen R. Galvin, Judge.

Cause No. 53C07-1409-MH-309

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Respondent, M.D., appeals the trial court's order of forced medication following a regular involuntary commitment order for a period expected to exceed ninety days.

We affirm.

## ISSUES

M.D. raises three issues on appeal, two of which we find dispositive and which we restate as:

(1) Whether the trial court violated M.D.'s due process rights during the hearing on the petition to forcibly medicate M.D; and

(2) Whether the trial court erred by finding by clear and convincing evidence that a forced medication order is necessary.

Appellee-Petitioner, Indiana University Health, Bloomington Hospital (IU Health) raises one issue, which we restate as: Whether M.D. timely appealed the trial court's regular commitment order.

## FACTS AND PROCEDURAL HISTORY

On September 20, 2014, M.D. was admitted to IU Health after becoming belligerent and combative at the consumption of several energy drinks and other substances in a local strip club. The officer accompanying M.D. to IU Health noted that M.D. "stated that he wanted to strangle someone, [he] also made several comments that people were going to die + Satan was coming for

the world." (Appellee's App. p. 22). The officer concluded that M.D. "seemed very violent towards other people" and opined that if M.D. "is not restrained he will attempt to harm himself or others." (Appellee's App. p. 22). Dr. Kimberly Irwin completed the Physician's Emergency Statement, documenting that M.D. "had a history of paranoid schizophrenia and became combative and belligerent in public after consuming multiple energy drinks and possible drugs. His mother claims he has been off his meds for 3-4 days. The patient is a danger to himself and others." (Appellee's App. p. 24).

[4] On September 22, 2014, IU Health filed its petition for emergency detention of mentally ill, which was approved by the trial court the same day. On September 25, 2014, IU Health filed a report following emergency detention, stating that Steven Goad, M.D. (Dr. Goad) had examined M.D. and found him to be gravely disabled, requiring continuing care and treatment. That same day, IU Health filed its petition for involuntary commitment. In its petition, IU Health asserted that M.D. was suffering from a psychiatric disorder, as a result of which he presented a substantial risk of hurting himself or others. The petition elaborated that M.D. made threats that "people are going to die." (Appellee's App. p. 2). In addition, the petition alleged that because of his condition, M.D. is also gravely disabled and "displays very poor judgment." (Appellee's App. p. 2). The physician's statement accompanying IU Health's petition was completed by Dr. Goad. Dr. Goad affirmed that M.D. was suffering from a psychiatric disorder and developmental disability which impaired his ability to function. While he did not seek a forced medication

order, Dr. Goad requested a commitment for a period expected to exceed ninety days.

[5] On September 30, 2014, the trial court conducted a hearing on IU Health's petition. At the hearing, Dr. Goad testified that he was M.D.'s admitting physician and had examined M.D. approximately seven out of the ten days M.D. was at IU Health. Dr. Goad explained that he had diagnosed M.D. with a chronic adjustment disorder and a verbal learning disorder, as well as possible attention deficit hyperactivity disorder. He elaborated that M.D.'s "inability to think logically and to plan lead to chronic problems in relationships and behavior[.]" (Transcript p. 6). M.D.'s episodes occur one after the other because of M.D.'s inability to plan and relate reasonably and understand what he just experienced. Based on this diagnosis, Dr. Goad believed M.D. to be gravely disabled to the point where he cannot take care of himself and is more "like a child who's not able to manage for himself and needs [] a parent like person to take care of them." (Tr. p. 7). Dr. Goad added that, if the petition was granted, M.D. would be discharged to Centerstone.

[6] Although M.D. realizes he needs help, M.D. testified that he self-medicates with marijuana but plans to continue to see Dr. Goad upon his release. M.D. informed the court that he needs to get away from his mother because his mother "doesn't want [him] to smoke weed so she'll call the cops." (Tr. p. 18). He conceded to having been admitted to IU Health five times previously, and attributed all of those admissions to his mother. At the conclusion of the testimony, the trial court issued an order of regular commitment. Specifically,

the trial court found M.D. to be suffering from chronic adjustment disorder, non-verbal learning disorder and determined him to be gravely disabled. The trial court concluded M.D. to be in need of commitment for a period expected to exceed ninety days. No forced medication order was entered.

[7] That same day, September 30, 2014, IU Health transferred M.D.'s commitment to Centerstone. On October 1, 2014, M.D. was re-admitted to IU Health after being notified by Centerstone that "M.D. has not been taking his meds and needs to be in a locked facility for his own safety and the safety of others." (Appellee's App. p. 12). On October 7, 2014, Perry Griffith, M.D. (Dr. Griffith), a psychiatrist at IU Health, contacted the trial court:

> The correct diagnosis for the patient in my opinion, is schizoaffective bipolar type. He needs a forced medication of Invega Sustenna.
>
> This would be for a dangerousness as he has threatened to kill people with a machete while in an untreated bipolar episode.
>
> The patient has been on a temporary commitment to Centerstone, and to IU Health in the year 2013, therefore I am asking for a regular commitment to the state of Indiana with a forced medication order of Haldol and Invega. The Invega will be used and the benefits far outweigh any negative side effects or there are no long-term side effects to Invega. He has been associated with this medication in the past and has taken it and has no problems with it.

(Appellant's App. p. 7).

[8] Recognizing that an involuntary commitment order was already in place, the trial court characterized Dr. Griffith's letter as a request for a forced medication order, and set the matter for a hearing on October 9, 2014. During the hearing, the trial court took judicial notice of the testimony from the September 30, 2014

commitment hearing. Although M.D.'s counsel objected to "holding a hearing," she agreed to proceed after rejecting the trial court's offer of a continuance. Dr. Griffith testified about M.D.'s multiple prior admissions and history of health diagnoses of psychosis and schizophrenia. M.D.'s counsel objected during Dr. Griffith's testimony on the ground that "[w]e're here on a forced medic, on a motion for a forced medication order. It's [] the regular commitment is not based on any kind of danger or violence and I think we're probably about to get into some hearsay as well." (Tr p. 34). The trial court overruled the objection. Dr. Griffith explained that M.D. needs "forced medication for his underlying schizophrenia or schizoaffective bi-polar disease" because he "doesn't always take his medications as an out-patient." (Tr. p. 36). At the close of the evidence, the trial court issued an Amended Order of Commitment – Forced Medication Order, ordering

1) [M.D.], is suffering from schizophrenic or schizoaffective disorder. Following his commitment on September 30, 2014, he was released. Within one day, it was necessary for him to be readmitted to the hospital. He threatened to harm others, stating that he would "kill with a machete."

2) [M.D.] is clearly dangerous to others when not taking his medication.

3) [M.D.] has a history of medication non-compliance.

4) [IU Health] is granted an order to treat [M.D.'s] condition with Haldol Decanoate or Invega Sustenna. The benefits from these medications outweigh any danger from their side effects.

(Appellant's App. p. 4).

M.D. now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Scope of Appeal*

Because IU Health presents this court with a procedural threshold question involving the scope of the appeal before us, we will address its issue first to determine the appropriate parameters of this appellate proceeding. At the center of this appeal are the trial court's two orders: the involuntary commitment order issued on September 30, 2014, and the forced medication order, entered on October 9, 2014. M.D.'s notice of appeal, filed on November 5, 2014, indicates that he is appealing the forced medication order. Nonetheless, M.D.'s appellate brief in large part contests the appropriateness and sufficiency of the trial court's involuntary commitment order. M.D. asserts that the involuntary commitment order was timely and properly appealed by way of the forced medication order. In essence, M.D. maintains that because the trial court in its forced medication order altered the grounds for involuntary commitment—from a chronic adjustment disorder which made M.D. gravely disabled to a schizoaffective disorder which made him dangerous to others—the sufficiency of the involuntary commitment order can be contested. IU Health objects to M.D.'s attempt to bring the involuntary commitment order into play and asserts not only that the appeal is untimely but M.D. "acknowledged that the purpose of the [October 9, 2014] hearing was to hear evidence on IU Health's Petition for Forced Medication Order." (Appellee's Br. p. 11).

The record established that on September 30, 2014, the trial court issued an involuntary commitment order for a period expected to exceed ninety days.

Barely seven days later, the trial court received a letter from Dr. Griffith, which it characterized—uncontested by the parties—as a petition for a forced medication order. At the commencement of the hearing on the petition, the trial court reaffirmed Dr. Griffith's request for a forced medication order. During his testimony, Dr. Griffith elaborated on the process of seeking the involuntary commitment and the grounds therefor, and testified on M.D.'s schizoaffective illness and his dangerous behavior. M.D.'s counsel objected to the testimony because "[w]e're here on a [] motion for a forced medication order. [] [T]he regular commitment is not based on any kind of danger or violence[.]" (Tr. p. 34). The trial court overruled the objection after asking a foundational question as to whether this is the kind of information the doctor would rely on in reaching his diagnosis, to which Dr. Griffith responded affirmatively. Later during the hearing, the trial court questioned Dr. Griffith as to the fact that M.D. "does not always take his medication" and the different types of medication M.D. has been prescribed in the past. (Tr. p. 36).

[12]     Although the trial court allowed Dr. Griffith a lot of discretion in presenting evidence on the grounds for an involuntary commitment—which were not before the court at that time—it clearly attempted to keep the hearing on track by asking pertinent questions regarding the request for a forced medication order and the medical requirements for issuing such an order. While at first glance the forced medication order might alter the grounds for involuntary commitment by referencing M.D.'s schizoaffective disorder and dangerousness, these comments should be interpreted in the light of the conditions for a forced

medication order. *See In Re Mental Commitment of M.P.*, 510 N.E.2d 645, 647-48 (Ind. 1987) (concluding that one of the requisite elements is a current and individual medical assessment of the patient's condition). As such, we cannot conclude that the trial court's hearing on the petition for forced medication was in fact a disguised hearing on M.D.'s involuntary commitment. Therefore, if M.D. wanted to appeal the involuntary commitment order, he should have filed a notice of appeal within thirty days of the trial court's September 30, 2014 order, which M.D. failed to do. *See* Ind. Appellate Rule 9(A)(1).

[13]  Even though M.D. concedes that his appeal to the involuntary commitment order was filed outside the thirty day period, he relies on our supreme court's opinion in *In the Matter of the Adoption of O.R.*, 16 N.E.3d 965, 971 (Ind. 2014), in an attempt to present the evidentiary sufficiency of the commitment for our review. In *In the Matter of the Adoption of O.R.*, our supreme court clarified that

> [t]he untimely filing of a Notice of Appeal is not a jurisdictional defect depriving the appellate courts of the ability to entertain an appeal. Instead, the timely filing of a Notice of Appeal is jurisdictional only in the sense that it is a Rule-required prerequisite to the initiation of an appeal in the [c]ourt of [a]ppeals. Timely filing relates neither to the merits of the controversy nor to the competence of the courts on appeal to resolve the controversy. . . . [T]he right to appeal having been forfeited, the question [then becomes] whether there are extraordinarily compelling reasons why this forfeited right should be restored.

*Id.* at 971.

[14]  We are mindful that "our appellate rules exist to facilitate the orderly presentation and disposition of appeals . . . and [] our procedural rules are

merely means for achieving the ultimate end of orderly and speedy justice." *Id.* at 971-72 (quoting *In Re Adoption of T.L.,* 4 N.E.3d 658, 661 n.2 (Ind. 2014)). Even though a forfeited right to appeal can be restored by presenting "extraordinarily compelling reasons," we cannot condone its application in what essentially amounts to a collateral attack on a previously issued final judgment. *See id.* at 971. Granting an appellate review of the trial court's involuntary commitment order in the case before us would open the proverbial floodgates as any final order at some point during a proceeding could be contested by way of a collateral attack of the last order issued. Accordingly, we limit our appellate review to the trial court's forced medication order.[1]

## II. *Due Process Rights*

[15] Continuing his characterization of the hearing on Dr. Griffith's petition for forced medication as a second commitment hearing, M.D. contends that his due process rights were violated because the trial court failed to follow the proceedings prescribed in Indiana Code section 12-26-7-4, the rights of subject individuals during regular commitment proceedings.

[16] However, because we review the appeal to a forced medication order, we find that Indiana Code chapter 12-26-2, governing the rights of persons during voluntary and involuntary treatment of mentally ill individuals, is more

---

[1] IU Health also contends that M.D.'s appellate brief was filed outside the thirty day period after notice of completion of transcript. *See* Ind. Appellate Rule 45(B)(1)(b). However, M.D.'s brief is file-stamped February 9, 2014, which was the final day to timely file his appellant's brief.

appropriate to the case at hand. Specifically, Indiana Code section 12-26-2-2 provides:

> **Notice of hearings; receipt of copies of petitions or orders; presence at hearings; application of section**
>
> Sec. 2 (a) This section applies under the following statutes:
>
> ***
>
>   (2) [I.C. §] 23-26-7 [involuntary commitment]
>
> (b) The individual alleged to have a mental illness has the following rights:
>
>   (1) To receive adequate notice of a hearing so that the individual or the individual's attorney can prepare for the hearing.
>
>   (2) To receive a copy of a petition or an order relating to the individual.
>
>   (3) To be present at a hearing relating to the individual. The individual's right under this subdivision is subject to the court's right to do the following:
>
>     (A) Remove the individual if the individual is disruptive to the proceedings.
>
>     (B) Waive the individual's presence at a hearing if the individual's presence would be injurious to the individual's mental health or well-being.
>
>   (4) To be represented by counsel.

[17] Reviewing the proceedings of the forced medication hearing, it is clear that M.D. was granted all the rights afforded to him by statute. Dr. Griffith's request for forced medication was filed on October 7, 2014. The following day, the trial court scheduled a hearing for October 9, 2014, and signed a transport order to ensure M.D.'s attendance at the hearing. Hearing notices were also sent to M.D.'s counsel and to IU Health, and the trial court "provided copies of

[Dr. Griffith's letter] to the parties." (Tr. p. 29). At the day of the scheduled hearing, M.D. appeared in person and was represented by counsel. Although the trial court was willing to grant M.D.'s counsel a continuance to prepare and call witnesses, M.D.'s counsel declined, not knowing if it would be in her "client's best interest to ask for a continuance." (Tr. p. 30). Accordingly, in light of this evidence, we cannot conclude that M.D.'s due process rights were violated.

### III. *Sufficiency of the Evidence*

Lastly, M.D. contends that there is "no clear and convincing evidence that a forced medication order is necessary." (Appellant's Br. p. 11). Our supreme court has addressed the issue of forced medication with antipsychotic drugs as follows:

> In order to override a patient's statutory rights to refuse treatment, the State must demonstrate by clear and convincing evidence that: 1) a current and individual medical assessment of the patient's condition has been made; 2) that it resulted in the honest belief of the psychiatrist that the medications will be of substantial benefit in treating the condition suffered, and not just in controlling the behavior of the individual; 3) and that the probable benefits from the proposed treatment outweigh the risk of harm to, and personal concerns of, the patient. At the hearing, the testimony of the psychiatrist responsible for the treatment of the individual requesting review must be presented and the patient may present contrary expertise.
>
> Equally basic to court sanctionable forced medications are the following three limiting elements. First, the court must determine that there has been an evaluation of each and every other form of treatment and that each and every alternative form of treatment has been specifically rejected. It must be plain that there exists no less restrictive alternative treatment and that the treatment selected is reasonable and

it the one which restricts the patient's liberty the least degree possible. Inherent in this standard is the possibility that, due to the patient's objection, there may be no reasonable treatment available. This possibility is acceptable. The duty to provide treatment does not extend beyond reasonable methods. Second, the court must look to the cause of the commitment. Some handicapped persons cannot have their capacities increased by anti-psychotic medication. The drug therapy must be within the reasonable contemplation of the committing decree. And thirdly, the indefinite administration of these medications is not permissible. Many of these drugs have little or no curative value and their dangerousness increases with the period of ingestion. The court must curtail the time period within which they may be administered. If a patient does not substantially benefit from the medication, it should no longer be administered.

*In Re Mental Commitment of M.P.*, 510 N.E.2d 645, 647-48 (Ind. 1987).

[19] Following the involuntary commitment hearing on September 30, 2014, M.D. was transferred to Centerstone. However, M.D. was re-admitted to IU Health on October 1, 2014, because he had "not been taking his meds and needs to be in a locked facility for his own safety and the safety of others." (Appellee's App. p. 12). During the hearing on IU Health's petition for forced medication, Dr. Griffith initially testified about his medical assessment of M.D.'s mental illness. He explained that M.D. has a long history of previous admittances on the basis of schizophrenia. Based on his current observation of M.D., Dr. Griffith reaffirmed the earlier diagnosis and informed the trial court that M.D. "clearly becomes violent and threatening[.]" (Tr. p. 33). Dr. Griffith elaborated that M.D. "needs forced medication for his underlying schizophrenia or schizoaffective bi-polar disease of Invega Sustina or Haldol Decanoate." (Tr. p. 36). Because M.D. does not always take his medications as an out-patient, Dr. Griffith recommended a monthly injection of Invega

Sustina. Based on previous experience, M.D. "does very well" with that: "[h]e is not threatening[,] he does not come in the Emergency Room by police threatening to kill people at business establishments with a machete. His thinking becomes clearer and he becomes a more logical reasonable person." (Tr. p. 37). Turning to Invega's potential side effects, Dr. Griffith explained that "there are no long term side effects that we know of" and the "[b]enefits for him far outweigh any risks." (Tr. pp. 38, 39).

[20] The limiting factors outlined in *Mental Commitment of M.P.* are present as well. Due to M.D.'s history of refusing to take his medications and, at times, self-medication with marijuana, Dr. Griffith considered it necessary to request a forced medication order to treat M.D.'s mental illness. A less restrictive alternative was attempted by his transfer to Centerstone, but this rapidly proved to be unsuccessful. Although the trial court's order is silent as to the time period within which the forced medication order will apply, the order is time-limited by statute. Pursuant to Ind. Code § 12-26-15-1(a), a commitment order must be reviewed at least annually. Moreover, the trial court directed IU Health to "submit a Periodic Report not later than September 30, 2015." (Appellant's App. p. 6). "While it would have been better for the trial court to include the periodic report deadline in its latest . . . forced medication order, the statutory review requirement exists regardless of whether the trial court's order mentions it." *See J.S. v. Center for Behavioral Health*, 846 N.E.1106, 1115 (Ind. Ct. App. 2006), *disapproved of on other grounds by Civil Commitment of T.K. v. Dep't of Veterans Affairs*, 27 N.E.3d 271 (Ind. 2015). Accordingly, we conclude that IU

Health presented clear and convincing evidence that M.D. was in need of a forced medication order.

## CONCLUSION

Based on the foregoing, we conclude that M.D. did not timely appeal the trial court's involuntary commitment order. With respect to the trial court's forced medication order, we conclude that M.D.'s due process rights were not violated during the proceedings and IU Health presented clear and convincing evidence to support the issuance of the order.

Affirmed.

Bailey, J. and Barnes, J. concur