

IN THE

# Court of Appeals of Indiana

In the Matter of the Civil Commitment of:
L.F.,

*Appellant-Respondent*



FILED

Apr 10 2026, 9:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

Sandra Eskenazi Mental Health Center,

*Appellee-Petitioner*

---

April 10, 2026

Court of Appeals Case No.
26A-MH-658

Appeal from the Marion Superior Court

The Honorable David J. Certo, Judge

Trial Court Cause No.
49D08-2602-MH-10733

---

**Opinion by Judge Weissmann**
Judges Brown and Foley concur.

**Weissmann, Judge.**

[1] After she was found standing in traffic, police brought L.F. to Eskenazi Mental Health Center (Eskenazi). At Eskenazi, L.F. told doctors that the leaders of a foreign nation had schemed to have her placed in the facility. During her hospitalization, L.F. assaulted another patient she believed was trying to sexually assault her and refused to take her medication as prescribed. At a hearing on Eskenazi's petition to commit her, L.F. admitted she had schizophrenia but asserted that she had it under control. The trial court committed L.F. to Eskenazi for up to 90 days. On appeal, L.F. claims her commitment is not appropriate because its treatment plan requires her to take medication over her objection. We affirm.[1]

## Facts

[2] L.F. has suffered from schizophrenia for several years. She was taken to Eskenazi on February 26, 2026, after police found her in the middle of a busy road calling out for help. Eskenazi applied for, and was granted, emergency detention of L.F. that day. At Eskenazi, L.F. was treated by Dr. Jason Gallo, a psychiatry resident in his second month at the hospital. Dr. Gallo reviewed L.F.'s medical history, including records of her past commitments, and met

---

[1] This expedited appeal is part of the two-year Marion County Expedited Mental Health Appeals Pilot Project established by the Indiana Supreme Court in response to the issue that the standard appellate timeline typically exceeds the duration of a temporary mental health commitment. *In re Marion Cnty. Expedited Mental Health Appeals Pilot Project*, No. 24S-MS-190, slip op. at 1 (Ind. July 16, 2024).

with L.F. seven times. During these meetings, L.F. explained that the government of Iran had been orchestrating events in her life for ten years, including a scheme to get her placed in Eskenazi because she fought with the Ayatollah on social media. L.F. also reported that her signature had been stolen, sold online, and fraudulently used in her commitment paperwork.

[3] At one point during her stay, L.F. assaulted another patient whom she claimed was going to rape her, based on the way he was looking at her. Staff intervened, and L.F. was placed in seclusion for 36 hours. She continued to believe this patient was going to assault her. Additionally, L.F. twice required acute medication, which is administered only when a patient is agitated and cannot be de-escalated verbally or behaviorally.

[4] On March 2, 2026, Eskenazi petitioned to determine whether L.F. should be temporarily or regularly committed. At a hearing on the petition on March 9, Dr. Gallo testified about his interactions with L.F. He explained that he had diagnosed L.F. with schizophrenia. This condition produced active delusions that impaired L.F.'s judgment and reasoning, according to Dr. Gallo. These delusions included her concerns about Iran's involvement in her life, her belief that her signature was stolen and sold online, and her unverifiable claim that she was the CEO of a notarizing and arbitration company. Dr. Gallo consulted with his attending physician, who agreed with his assessment concerning L.F.'s schizophrenia.

[5]     Dr. Gallo also testified that L.F. was resistant to taking her prescribed medication. She first agreed to take medication only on March 6, when Dr. Gallo recommended 15 milligrams of Abilify. However, L.F. responded that she would take no more than 8 milligrams for "Dr. Gallo's safety." Tr., p. 7. Dr. Gallo asked what she meant by that, but L.F. "would not elaborate on that veiled threat." *Id.* On the morning of the hearing, L.F. had agreed to take 10 milligrams, but stated that "after the Court hearing she [would] no longer take Abilify." *Id.* at 8.

[6]     Dr. Gallo testified that medication compliance is "extremely important" in managing L.F.'s schizophrenia. *Id.* He explained that "[s]chizophrenia left untreated tends to worsen, and symptoms will become exacerbated over time without treatment." *Id.* Taking a lower dosage than recommended could provide "[s]uboptimal" results, allowing L.F.'s delusions and impairment to persist. *Id.* at 23. Dr. Gallo recommended a treatment plan for L.F. of oral Abilify at regularly-increased dosages until the effective level is determined and then a transition to a long-acting form of the medication. Dr. Gallo testified that temporary commitment could stabilize L.F.'s symptoms and treatment could get her delusions "under control," allowing her to "live a healthy life." *Id.*

[7]     L.F. testified that she has schizophrenia but claimed her condition was under control. She reiterated her concerns about Iran's involvement with her hospitalization. L.F. also explained her work on various projects, including a trademark application and her notarizing and mediation business, and was concerned that medication made it "hard to think" and "form new memories."

*Id.* at 35. She stated that if she was discharged that day, she would not take medication.

[8] The trial court ordered that L.F. be temporarily committed at Eskenazi for a period not to exceed 90 days, and L.F. appeals.

## Discussion and Decision

[9] "When reviewing the sufficiency of the evidence supporting a civil commitment, we consider only the probative evidence and reasonable inferences supporting it, without weighing evidence or assessing witness credibility." *A.O. v. Cmty. Health Network, Inc.*, 206 N.E.3d 1191, 1193 (Ind. Ct. App. 2023) (citing *Civ. Commitment of T.K. v. Dep't of Veterans Affairs*, 27 N.E.3d 271, 273 (Ind. 2015)). "We will affirm if clear and convincing evidence supports the trial court's judgment." *Id.* "Clear and convincing evidence requires proof that the existence of a fact is 'highly probable.'" *Id.* (quoting *Matter of Commitment of C.N.*, 116 N.E.3d 544, 547 (Ind. Ct. App. 2019)).[2]

[10] To commit L.F., Eskenazi had to prove by clear and convincing evidence that: (1) L.F. is mentally ill and either dangerous or gravely disabled; and (2) her detention or commitment is appropriate. *See* Ind. Code § 12-26-2-5(e). On

---

[2] Many of the cases the parties analyze as comparative authority—*G.Q. v. Branam*, 917 N.E.2d 703 (Ind. Ct. App. 2009); *In re Commitment of G.M.*, 743 N.E.2d 1148 (Ind. Ct. App. 2001); and *In re Commitment of T.K.*, 993 N.E.2d 245 (Ind. Ct. App. 2013)—were decided under a standard of review that our Supreme Court expressly rejected. *See T.K.*, 27 N.E.3d at 274 (holding that the standard under which an order is affirmed if it "represents a conclusion that a reasonable person could have drawn" incorrectly lowers the burden of proof); *A.D. v. Cmty. Fairbanks Behav. Health,* 274 N.E.3d 463, 464 (Ind. 2026). We therefore do not rely on those decisions.

appeal, L.F. does not challenge the first element. Instead, she claims that her commitment is "not appropriate" because "[Eskenazi's] proposed treatment plan required forcibly medicating L.F., a power granted by the commitment order." Appellant's Br., pp. 4-5. L.F. argues that Eskenazi failed to present sufficient evidence to override her right to refuse medical treatment.[3]

[11] To override a patient's right to refuse medication, the petitioner must present clear and convincing evidence that:

> 1) a current and individual medical assessment of the patient's condition has been made;
>
> 2) that it resulted in the honest belief of the psychiatrist that the medications will be of substantial benefit in treating the condition suffered, and not just in controlling the behavior of the individual;
>
> 3) and that the probable benefits from the proposed treatment outweigh the risk of harm to, and personal concerns of, the patient.

*In re Mental Commitment of M.P.*, 510 N.E.2d 645, 647 (Ind. 1987). Additional limiting principles apply including the requirement that the court determine that there has been an evaluation of every other form of treatment and that each alternative has been rejected. *Id.*

---

[3] L.F. does not dispute the portion of the commitment order requiring her to take all medications as prescribed "upon attaining outpatient status." Order Temp. Commitment (filed Mar. 9, 2026). She does not raise an argument under the special-conditions framework governing outpatient commitments. *See generally* Ind. Code § 12-26-14-3; *A.S. v. Cmty. Fairbanks Behav. Health*, 262 N.E.3d 853, 859 (Ind. Ct. App. 2025).

[12] L.F. does not dispute that an individual assessment of her condition was conducted by Dr. Gallo. Rather, she argues that Eskenazi failed to present evidence on the other two elements required under *M.P.*—that the medication presents substantial benefit and that the benefits outweigh the risks and concerns—as well as the limiting principle that every other alternative treatment was considered and rejected. We address each in turn and affirm.

## I. Substantial Benefit

[13] L.F. claims Dr. Gallo never specifically testified that the Abilify would provide a "substantial" benefit to treating her schizophrenia, rather than her behavior. Though he did not use that precise language, Dr. Gallo provided multiple statements as to the benefits of the recommended medication. He testified that schizophrenia "left untreated tends to worsen," and his treatment plan was designed to get L.F.'s "[d]elusions under control" and allow her to "live a healthy life." Tr., pp. 8, 23. He testified that medication compliance was "[e]xtremely important" for "managing her schizophrenia." *Id.* at 8. Dr. Gallo explained that he selected Abilify after discussing various other options with L.F. because "Abilify tends to be better" in terms of the sedative side effect that concerned L.F. *Id.* at 16.

[14] L.F. claims Dr. Gallo's statement about treatment stabilizing L.F.'s symptoms referred to the commitment as a whole and not necessarily the medication. However, Dr. Gallo made no such distinction between the two in his testimony, and the only treatment to be administered during the commitment that was discussed was Abilify. Therefore, the trial court could reasonably infer

that Dr. Gallo believed the Abilify, rather than the commitment alone, would stabilize L.F.'s symptoms.

[15] Considering this testimony and the reasonable inferences that could be drawn from it, the trial court's determination that the medication provided a substantial benefit to the treatment of L.F.'s schizophrenia was supported by clear and convincing evidence. *See A.O.*, 206 N.E.3d at 1193.

## II. Benefits Outweigh Risks and Concerns

[16] Next, L.F. argues that Dr. Gallo's testimony on the risk-benefit balance was too conclusory. She claims that Dr. Gallo "did not discuss a single benefit of Abilify" or "why the medication was necessary" and, though he listed three side effects, he acknowledged there were others that he did not name. Appellant's Br., p. 6; Reply Br., p. 3. However, the record is not as thin as L.F. suggests. Under our deferential standard of review, it is enough.

[17] First, Dr. Gallo's testimony that medication compliance is "extremely important" for "managing [L.F.'s] schizophrenia" can be understood to mean that an antipsychotic medication was necessary to effectively treat L.F.'s condition and reduce her delusions. Tr., p. 8. This inference is further supported by Dr. Gallo's concerns that leaving L.F.'s schizophrenia untreated, or treated with medication below the therapeutic dose, would allow her delusions to persist—delusions that impaired her judgment and led her to attack a fellow patient.

Dr. Gallo then explained why he had chosen Abilify. He "discussed other[]" antipsychotic medications with L.F. and selected Abilify because it "tends to be better" in terms of sedative side effects, which was L.F.'s main concern. *Id.* at 16. Therefore, Dr. Gallo identified a specific benefit of Abilify.

Finally, Dr. Gallo was aware of Abilify's side effects, including "restlessness, vomiting, tremor[s], to name a few." *Id.* at 20. Though he did not list every side effect, his testimony made it clear that he was aware of them and weighed them. When specifically asked if he believed "the benefits of that suggested medication will outweigh the potential side effects," Dr. Gallo responded: "I do." *Id.* at 10.

This individualized balancing reflects a careful selection of Abilify based on L.F.'s condition, her need for antipsychotic medication, her specific concerns, and the general side effects. Given Dr. Gallo's testimony, and the reasonable inferences that can be drawn from it, clear and convincing evidence supported the court's determination that the benefits of treatment with Abilify outweigh L.F.'s specific concerns about the medication's side effects and the risks of leaving L.F.'s condition untreated.

## III.  Alternative Treatment Options

Finally, L.F. argues that Dr. Gallo failed to evaluate every alternative treatment, as he considered only three options: no medication, Abilify, and Cobenfy, L.F.'s prior outpatient prescription medication. However, she again construes the record too narrowly.

[22] When asked whether L.F. had agreed to take "any other type of antipsychotic medication," Dr. Gallo answered: "No, we discussed others." *Id.* at 16. Thus, Dr. Gallo considered other medications but selected Abilify based on L.F.'s need for antipsychotic medication and specific concerns about side effects. Dr. Gallo then explained that he rejected Cobenfy as an option because it caused nausea in L.F. and she refused to take it. He also rejected the option of no medication based on L.F.'s history; when her schizophrenia was not treated, she experienced intense delusions that interfered with her judgment and led to an assault of a fellow patient.

[23] This evidence supports the conclusion that Dr. Gallo selected Abilify after considering every alternative treatment and rejecting each. *See B.D. v. Ind. Univ. Health Bloomington Hosp.*, 121 N.E.3d 1044, 1052 (Ind. Ct. App. 2019) (finding trial court could have "reasonably concluded" that treating psychiatrist "had considered, but rejected, all reasonable lesser-restrictive forms of treatment," though other non-pharmacological options were not explicitly named).

[24] L.F. attempts to distinguish *B.D.* because the treating psychiatrist in that case "testified at the hearing that he had considered lesser-restrictive alternative treatment options" and Dr. Gallo did not make that specific statement. *Id.* at 1052. But L.F.'s argument—essentially that the evidence was not specific or explicit enough—contravenes our standard of review, which permits the trial court to make reasonable inferences based on the evidence. *See A.D. v. Cmty. Fairbanks Behav. Health,* 274 N.E.3d 463, 464 (Ind. 2026).

## Conclusion

Dr. Gallo conducted an individualized assessment of L.F.'s condition, testified to his honest belief that Abilify would stabilize her schizophrenia, addressed her specific concern about sedative side effects, and weighed the benefits of the medication against the risks of side effects and risks of non-treatment. He also considered and rejected alternative treatment options. The trial court's determination that L.F.'s commitment was appropriate is supported by clear and convincing evidence. We therefore affirm.

Brown, J., and Foley, J., concur.

ATTORNEY FOR APPELLANT

Sarah Medlin
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Bryan H. Babb
Seema R. Shah
Bose McKinney & Evans LLP
Indianapolis, Indiana