## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 15 2016, 9:54 am

Kevin S. Smith

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

David E. Jose
Shelley M. Jackson
Josh S. Tatum
Plews Shadley Racher & Braun LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Commitment of T.M., | March 15, 2016 |
| T.M., *Appellant-Respondent,* | Court of Appeals Case No. 49A02-1508-MH-1034 |
| v. | Appeal from the Marion Superior Court |
| Adult & Child Mental Health Center, Inc., | The Honorable Steven R. Eichholtz, Judge |
| *Appellee-Petitioner.* | Trial Court Cause No. 49D08-9408-MH-472 |

**Najam, Judge.**

## Statement of the Case

T.M. appeals from the trial court's order continuing his regular involuntary commitment, as well as the trial court's Order to Treat and Forced Medication Order. T.M. presents three issues for our review, which we consolidate and restate as:

> 1. Whether Adult & Child Mental Health Center, Inc. ("ACMH") presented sufficient evidence of dangerousness or grave disability to sustain the trial court's order continuing his regular involuntary commitment.
>
> 2. Whether ACMH presented sufficient evidence to support the trial court's order to treat and forced medication order.

We affirm.

## Facts and Procedural History

T.M. suffers from chronic paranoid schizophrenia. T.M. has been the subject of two court orders for regular commitment,[1] the first order spanning from 2003 to 2007, and the second order spanning from 2009 until the present. T.M. has been a patient at ACMH since 2002. A "treatment team" consisting of a skill specialist, a peer recovery specialist, a care coordinator, and a psychiatrist oversee T.M.'s outpatient treatment. Tr. at 11-12. The treatment team meets

---

[1] Regular commitment entails the custody, care, or treatment, either as an inpatient or outpatient, of a mentally ill person who is either dangerous or gravely disabled for a period longer than ninety days. *See* Ind. Code § 12-26-7-1 (2015).

once a week to discuss "how [T.M.'s] treatment is going[.]" *Id.* at 13. Dr. Teri Pellow has been T.M.'s psychiatrist since "late 2013," and she sees T.M. every one to three months, with the frequency of visits dependent on how T.M. is doing. *Id.* at 11.

[4] T.M. has been living independently and receiving outpatient treatment under the regular commitment for several years.[2] His schizophrenia had been treated with Haldol injections "for a number of years," but, in approximately February 2015, "his symptoms seem[ed] to be increasing[.]" *Id.* at 13. Accordingly, Dr. Pellow "determined that Risperdal might be a better medicine for him[.]"[3] *Id.* T.M. had taken Risperdal "in the past," and he "was agreeable to taking it." *Id.* But after "a couple of injections" of Risperdal, "he started refusing them." *Id.* at 14. T.M. then agreed to take the oral version of Risperdal, but "he quit taking that" and "refused to come to office appointments to see" Dr. Pellow. *Id.* Then T.M. "began refusing to see the staff that would go out to his apartment," and he "refus[ed] to take phone calls." *Id.*

[5] On May 29, 2015, T.M. filed a Motion for Hearing for Review or Dismissal of Regular Commitment. Following a hearing on that motion, the trial court found that T.M. was mentally ill, dangerous to himself and others, and gravely

---

[2] T.M. was hospitalized for treatment of his schizophrenia twice in 2009 after he had made verbal threats to some of his neighbors. And he was hospitalized in 2012 following a suicide attempt where he severed a tendon in his wrist. T.M. was also incarcerated for ten years at some point.

[3] Risperdal is the brand name of risperidone.

disabled. Accordingly, the trial court ordered that T.M.'s regular commitment would continue "until discharged or until the Court terminates the commitment." Appellant's App. at 19. The trial court also issued an Order to Treat, whereby ACMH is permitted to administer risperidone to T.M. unless his physician "determines that [T.M.] does not substantially benefit from the medication." *Id.* at 20. Finally, the trial court issued a Forced Medication Order whereby ACMH is permitted to administer risperidone to T.M. unless his physician "determines that [T.M.] does not substantially benefit from the medication." *Id.* This appeal ensued.

## Discussion and Decision

### *Standard of Review*

Our supreme court recently set out the applicable standard of review as follows:

> "[T]he purpose of civil commitment proceedings is dual: to protect the public and to ensure the rights of the person whose liberty is at stake." *In re Commitment of Roberts*, 723 N.E.2d 474, 476 (Ind. Ct. App. 2000). The liberty interest at stake in a civil commitment proceeding goes beyond a loss of one's physical freedom, and given the serious stigma and adverse social consequences that accompany such physical confinement, a proceeding for an involuntary civil commitment is subject to due process requirements. *See Addington v. Texas*, 441 U.S. 418, 425-26 (1979). To satisfy the requirements of due process, the facts justifying an involuntary commitment must be shown "by clear and convincing evidence . . . [which] not only communicates the relative importance our legal system attaches to a decision ordering an involuntary commitment, but . . . also has the function of reducing the chance of inappropriate commitments."

*Commitment of J.B. v. Midtown Mental Health Ctr.*, 581 N.E.2d 448, 450 (Ind. Ct. App. 1991) (citations omitted), *trans. denied*.

In reviewing the sufficiency of the evidence supporting a determination made under the statutory requirement of clear and convincing evidence, an appellate court will affirm if, "considering only the probative evidence and the reasonable inferences supporting it, without weighing evidence or assessing witness credibility, a reasonable trier of fact could find [the necessary elements] proven by clear and convincing evidence." *Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135, 137 (Ind. 1988). This appellate standard of review applies in civil commitment decisions. *See GPH v. Giles*, 578 N.E.2d 729, 732-33 (Ind. Ct. App. 1991) ("In reviewing a claim of insufficient evidence in a commitment case, we keep in mind that commitment may be ordered only if the elements upon which the commitment is ordered are proven by clear and convincing evidence, and we consider only that evidence most favorable to the judgment, along with all favorable inferences therefrom."), *trans. denied*; *Jones v. State*, 477 N.E.2d 353, 360 (Ind. Ct. App. 1985) ("In reviewing a claim of insufficient evidence, we consider only that evidence most favorable to the judgment along with all favorable inferences therefrom, yet keep in mind that commitment may be ordered only upon a finding of clear and convincing evidence."), *trans. denied*; *see also Cheek v. State*, 567 N.E.2d 1192, 1196 (Ind. Ct. App. 1991) (citing *Jones*).

*T.K. v. Dep't of Veterans Affairs (In re Commitment of T.K.)*, 27 N.E.3d 271, 273-74 (Ind. 2015).

### Issue One:  Continuation of Regular Commitment

T.M. first contends that the evidence is insufficient to prove either that he is dangerous or that he is gravely disabled.  In order to obtain an order for a

regular commitment or, in this case, to continue a regular commitment,[4] the petitioner must prove by clear and convincing evidence that: (1) the individual is mentally ill and *either* dangerous *or* gravely disabled; and (2) detention or commitment of that individual is appropriate. Ind. Code § 12-26-2-5(e) (2015). Here, the trial court found that T.M. is mentally ill and both dangerous and gravely disabled, and the court found that commitment of T.M. is appropriate. On appeal, T.M. concedes that he is mentally ill, but, again, he challenges the sufficiency of the evidence to show that he is either dangerous or gravely disabled. Because the statute is written in the disjunctive, we need only address the sufficiency of the evidence with respect to one of those findings.

[8] A mentally ill individual is gravely disabled if, as a result of mental illness, the individual is in danger of coming to harm because the individual: (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or (2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently. I.C. § 12-7-2-96. Dr. Pellow testified in relevant part as follows: T.M. is prescribed medications for elevated cholesterol and diabetes, and he is not taking "any of his medications"; T.M. is at risk of "not be[ing] able to maintain his apartment" if he does not take Risperdal; "[i]f he gets back on his medication, and back seeing the treatment team . . . [T.M.'s]

---

[4] T.M. sought review of his regular commitment under Indiana Code Section 12-26-15-3. The State's burden to prove that T.M. should continue to be subject to a regular commitment is the same as that applicable to a petition to establish a regular commitment. *See* I.C. § 12-26-15-4; I.C. § 12-26-7-4.

prognosis would be good to continue to live in the community"; "he's increasingly reclusive" and is "not attending to his physical health or mental health"; and T.M. is "having difficulty having to find people to get food for him because he doesn't want to go out." Tr. at 16-27. Dr. Pellow also testified that T.M. "continues to have active symptoms" and has an "exceedingly low" likelihood "that he would be able to do well without medicine." *Id.* at 28.

[9] T.M. maintains that, at the time of the review hearing in July 2015, he had been unmedicated "for several months" and had been living independently. Appellant's Br. at 12. He points out that there was no evidence that he was malnourished, dressed inappropriately, or lacked in hygiene or grooming. And he states that the undisputed evidence shows that he has an "adequate income through his monthly social security check" and he pays his bills and apartment rent." *Id.* Thus, he contends that he is not gravely disabled.

[10] But T.M.'s contentions amount to a request that we reweigh the evidence, which we will not do. Again, Dr. Pellow testified that T.M. is not attending to his physical health or mental health. In particular, T.M. is not taking prescribed medications to treat his elevated cholesterol and diabetes; he is becoming increasingly reclusive; he relies on others to get him food, which is becoming difficult; and he is at risk of losing his apartment if he continues to refuse to take Risperdal. Thus, Dr. Pellow's testimony shows that, without medication and treatment, T.M. is in danger of losing his apartment, going without food, and endangering his physical health.

[11] In addition, we note that T.M.'s testimony at the review hearing indicated a substantial impairment or an obvious deterioration of his judgment and reasoning. T.M. denied having been hospitalized in the past ten years despite the evidence that he was hospitalized twice in 2009 and once in 2012. T.M. admitted that "the last time" he was hospitalized it was because he had heard "a voice . . . because of the apartment that [he] was livin' in had some type of chemicals in it." Tr. at 8. T.M. also testified that he had "made a complaint against" one of his neighbors "because every time he opens up—comes out of his apartment there's an odor that smells like its—[indiscernible]." *Id.* at 8-9. Finally, when asked whether he was keeping his apartment clean, T.M. testified as follows:

> Well, I'm trying to clean it up but I—the [re]frigerator had some kind of . . . orange stuff. Black and orange and sewer—I had to put a rag in the sewer cause there was like orange stuff. Everything. My walls were yellow. My blinds were—I mean it was just like brown, green, orange stuff just runnin' down the— runnin' down the blinds. It's so dirty and I—my apartment manager says that it was smoke. And my [re]frigerator turned yellow and I washed it down with bleach. I cleaned the floor, I moved the stove. Cleaned it . . . .

*Id.* at 9. Dr. Pellow testified that T.M. has very low insight into his illness and his need for medication, and T.M.'s testimony corroborates Dr. Pellow's testimony.

[12] We hold that ACMH has proven by clear and convincing evidence that T.M. is in danger of coming to harm both because he is unable to provide for his food,

clothing, shelter, or other essential human needs and because he has a substantial impairment or an obvious deterioration of his judgment, reasoning, or behavior that results in his inability to function independently. I.C. § 12-7-2-96. The trial court did not err when it found that T.M. is gravely disabled and continued his regular commitment.

### *Issue Two: Order to Treat and Forced Medication Order*

[13] T.M. next contends that the trial court erred when it issued the Order to Treat and Forced Medication Order. And T.M. maintains that the trial court erred when it specified that ACMH be permitted to administer risperidone. In support of that contention, T.M. relies on our supreme court's opinion in *In re M.P.*, 510 N.E.2d 645 (Ind. 1987). But T.M.'s reliance on *In re M.P.* is misplaced for two reasons. First, the holding in *In re M.P.* was based on an involuntarily committed patient's statutory right to refuse treatment found in Indiana Code Section 16-14-1.6-7, which was repealed in 1992. Second, the current statute, Indiana Code Section 12-27-5-2, provides that an involuntarily committed patient "who wants to refuse to submit to treatment . . . may *petition* the committing court . . . for consideration of the treatment[.]" (Emphasis added). T.M. does not allege that he petitioned the court under Indiana Code

Section 12-27-5-2, and our review of the record does not reveal any such petition.[5]  As such, we cannot consider T.M.'s argument on this issue.

[14]    Affirmed.

Riley, J., and May, J., concur.

---

[5]  T.M. only petitioned the trial court for review of the regular commitment under Indiana Code Section 12-26-15-3.